1998-NMCA-172

969 P.2d 970

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Michelle GUTIERREZ, Defendant–Appellant.**

**No. 18905.**

Court of Appeals of New Mexico.

Sept. 28, 1998.

Tom Udall, Attorney General, Ann M. Harvey, Ass't Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Carolyn R. Glick, Ass't Appellate Defender, Santa Fe, for Appellant.

## *OPINION*

PICKARD, Judge.

{1} Defendant appeals her conviction for negligent use of a firearm. Defendant raises two issues on appeal: (1) whether the trial court erred in admitting, as substantive evidence, the victim's prior statement to police and (2) whether fundamental error occurred when the trial court failed to instruct the jury on the element of unlawfulness. We reverse on the first issue, and as a result, we do not need to address the second issue.

## FACTS

{2} The victim in this case is Defendant's husband, Paul. On the day of the incident, Defendant's friend Wanda Reed was involved in a fight with her husband, Mike Reed. Wanda decided that she wanted to leave town for a while and asked Defendant to drive her to Arizona. Defendant, along with Paul and Wanda, drove to the Reeds' home. Defendant and Wanda waited in the car while Paul went inside to talk to Mike. After some time, Defendant went into the Reeds' home to get Paul. While they were inside, Paul grabbed Defendant, twisting her fingers. Defendant left with Wanda and drove back to her own house. Defendant told Wanda that Paul had hurt her and he was not going to do it again.

{3} Defendant went into her house, taking with her two guns that were usually kept in the car. Upon entering her house, Defendant disarmed one gun and placed the other gun in her lap after disengaging the safety mechanism. As Defendant was sitting with the gun in her lap, Paul walked into the house. According to Wanda, Defendant had the gun sitting on her knees and pointed in Paul's general direction. Wanda testified that Defendant never aimed the gun at Paul. Paul started waving his arms and saying, "What are you gonna do with that, you gonna shoot me with that?" Suddenly, Paul jumped over the coffee table and grabbed the gun. Wanda testified that she was behind Paul and could only see that he twisted his arm. After Paul grabbed the gun and twisted his arm, the gun discharged, shooting him.

{4} Mike, who walked in behind Paul, testified that Defendant was sitting down holding the gun and the barrel was pointed down at the floor. He then turned and left and did not see anything more.

{5} At trial, Paul testified that, when he walked into the house, Defendant was sitting with the gun in her lap, but the gun was not in a position to shoot him. Paul lunged across the coffee table, grabbed the gun and Defendant's hand, and twisted the gun around; it then went off. Paul could not say who shot the gun, but he believed the shooting was an accident. This testimony conflicted with his earlier statement to police the day after the shooting. He told the police he and Defendant had been arguing before the shooting. Paul said, "I walked in the door, I argued with my wife, and she shot me ." When the police asked, "Who were you shot by?" Paul answered, "My wife."

{6} Defendant was charged with aggravated battery on a household member, contrary to NMSA 1978, § 30-3-16(C) (1995). Prior to trial, Defendant filed a motion in limine to suppress all prior inconsistent statements that would be used as substantive evidence to convict her. Defense counsel argued that Paul's statement was not given under oath and was therefore hearsay. *See* Rule 11-801(D)(1)(a) NMRA 1998. Because the statement was hearsay, defense counsel argued, the statement could be used only to impeach, and not for substantive purposes. Defense counsel stated that a curative instruction would be necessary if the State attempted to use Paul's statement as sub-

stantive evidence. The trial court denied the motion in limine.

{7} At the close of evidence, defense counsel moved for a directed verdict, claiming that the only evidence that Defendant intended to shoot Paul was Paul's prior hearsay statement. This motion was denied. Defense counsel then asked that the State be precluded from arguing in favor of a guilty verdict based on Paul's prior statement. The State countered by claiming that Paul's prior statement could be used as substantive evidence and that, based on the statement, the State would argue to the jury that it was clear that Defendant intended to shoot Paul. The trial court asked for a jury instruction, which Defendant tendered. The trial court then rejected Defendant's tendered instruction. Following deliberations, the jury returned a verdict finding Defendant guilty of negligent use of a firearm, as a lesser included offense of aggravated battery on a household member.

## DISCUSSION

### Rule 11–801(D)(1)(a)

{8} In her motion in limine, Defendant sought to suppress all prior inconsistent statements that the State intended to use as substantive evidence to convict Defendant. Defendant argued that, based on the 1995 amendment to Rule 11–801(D)(1)(a), prior inconsistent statements not given under oath should, as under federal law, be inadmissible as substantive evidence. *See* Rule 11–801(D)(1)(a). Defendant informed the trial court that a curative instruction would be necessary if the State attempted to use prior inconsistent statements for purposes other than impeachment. At the close of evidence, Defendant submitted a curative instruction which read:

> On cross examination Michael Reed, Wanda Reed and Paul Gutierrez were asked about certain inconsistent statements they had previously made. You may consider such evidence for the purpose of determining whether the witnesses told the truth when they testified in this case and for that purpose only.

This instruction was rejected by the trial court.

{9} The State concedes that the 1995 amendment to the rule, which added language identical to the federal rule, makes it likely that New Mexico will follow the interpretation of the rule that has been adopted by the federal courts. However, the State contends that admission of any prior inconsistent statements in this case was harmless. We discuss the rule amendment below. Later in this opinion, we discuss the State's contention regarding harmless error.

{10} The rule, as amended in 1995, reads:

> D. Statements which are not hearsay. A statement is not hearsay if:
>
> (1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is
>
> (a) inconsistent with the declarant's testimony *and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition* [.] (Emphasis added.)

Because none of the statements were made under oath under the circumstances indicated, they do not satisfy the requirements of Rule 11–801(D)(1)(a). New Mexico precedents permitting the substantive use of prior inconsistent statements without regard to the oath requirement, *see State v. Duran,* 107 N.M. 603, 607, 762 P.2d 890, 894 (1988); *State v. Lancaster,* 116 N.M. 41, 46, 859 P.2d 1068, 1073 (Ct.App.1993), are no longer controlling because they were based on an earlier version of our rule of evidence. Because Defendant adequately preserved her argument by tendering a limiting instruction, *see Gonzales v. Sansoy,* 103 N.M. 127, 131, 703 P.2d 904, 908 (Ct.App.1984), the trial court erred in refusing to give a limiting instruction.

### Harmless Error

{11} The State argues that the failure to instruct the jury that the prior statements could be used only for purposes of impeachment was harmless. Under the usual test, for the error to be considered harmless, there must be (1) substantial evidence to support Defendant's conviction

without reference to the prior statements, (2) such a disproportionate amount of permissible evidence that the evidence of the statements could not have contributed to Defendant's conviction, and (3) no substantial conflicting evidence to discredit the State's evidence. *See State v. Elinski*, 1997–NMCA–117, ¶ 25, 124 N.M. 261, 948 P.2d 1209. Where the improperly admitted evidence is cumulative of properly admitted evidence, however, the three steps are usually not separately analyzed. *See State v. Woodward*, 121 N.M. 1, 5, 908 P.2d 231, 235 (1995). Instead, the degree and type of cumulativeness is analyzed. For example, in *Chacon v. State*, 88 N.M. 198, 200, 539 P.2d 218, 220 (Ct.App.1975), the fact that the evidence came from an independent source, not connected to the defendant, was sufficient to make what seemed like identical evidence not cumulative.

{12} In this case, Defendant was convicted of negligent use of a firearm, which consists of endangering the safety of another by handling or using a firearm in a negligent manner. *See* NMSA 1978, § 30–7–4(A)(3) (1993). The jury instruction provided that Defendant could be found guilty of negligent use of a firearm if she either (1) discharged a firearm, knowing that she was endangering a person, or (2) endangered the safety of another by handling or using a firearm in a negligent manner. The jury verdict did not indicate which alternative ground the jury relied on in finding Defendant guilty of the crime. Without reference to the prior statements made by the witnesses in this case, the only direct testimony presented at trial was that Defendant was sitting on the couch with a gun in her lap pointed at the floor or in Paul's "general direction." The testimony at trial was that Defendant never aimed the gun at Paul. Finally, there was testimony from witnesses, including Paul, that the gun was not discharged until he lunged over the table and grabbed Defendant and the gun. None of the witnesses testified at trial that Defendant was the one who actually shot the gun.

{13} The centerpiece of the prosecutor's argument to the jury was the prior statement Paul made to the police:

[I]n determining what the truth is with regard to this case, you need to look at what they said close to the time of what happened. You need to look at what they told the police.... And what was said, very simply, ... by Paul Gutierrez was—it was a very open-ended question, "Who shot you?" A very open-ended question. "My wife did."

It is true that there was one item of properly admitted substantive evidence that Defendant shot the gun—a previous statement by Paul, an excited utterance immediately following the shooting to the effect that, "My God, the bitch shot me." This excited utterance, made while Paul was intoxicated, was not used by the prosecutor at all during his closing argument. The prosecutor instead focused on the statement given by Paul to the police the next day. In addition, the jury could have regarded Paul's excited utterance as a reaction to the entire incident, rather than as a direct statement that Defendant actually intended to do the shooting.

{14} Certainly in the prosecutor's view, Paul's statement to the police that Defendant shot him after the two argued was much stronger evidence, either of Defendant's intent or of what happened, than the excited utterance. The prior statements made by the witnesses, including Paul, suggested that Defendant had been threatened by Paul prior to the incident, that Defendant aimed the gun at Paul, and that Defendant had been the one who pulled the trigger. In those circumstances, the error cannot be deemed harmless. *See Elinski*, ¶ 25 (error in admission of evidence must be declared prejudicial, and not harmless, if there is a reasonable possibility that the evidence might have contributed to the conviction). In other words, if the prior statements are not considered substantive evidence, the only direct evidence that Defendant, and not Paul himself, actually did the shooting was Paul's ambiguous excited utterance. This stands in contrast to testimony at trial that indicated that Defendant merely sat on the couch with the gun in her lap, until Paul jumped over the table, grabbed the gun, and attempted to take it

from Defendant's hand, thus causing the weapon to discharge. In fact, it is reasonably possible that the evidence of the prior statements, particularly Paul's statement that Defendant shot him after they argued, influenced the jury to find that Defendant endangered Paul's safety by handling the gun in a negligent manner. *See State v. Chapman*, 104 N.M. 324, 326, 721 P.2d 392, 394 (1986) (failure to give limiting instruction resulted in prejudice to defendant). Therefore, the failure to give a limiting instruction in this case was not harmless error.

## CONCLUSION

{15} Based on our discussion, we reverse Defendant's conviction and remand for a new trial.

{16} **IT IS SO ORDERED.**

HARTZ, C.J., and DONNELLY, J., concur.