[821 NE2d 122, 787 NYS2d 697]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANKLIN RODRIGUEZ, Appellant.

Argued October 19, 2004; decided November 30, 2004

## POINTS OF COUNSEL

*Center for Appellate Litigation,* New York City (*Barbara Zolot* and *Robert S. Dean* of counsel), for appellant. I. It was error (a) under *People v Burgos-Santos* (98 NY2d 226 [2002]) for the trial court to admit on rebuttal the factually mistaken notice of alibi appellant disavowed during trial; and (b) for the court, having admitted the notice, to then bar appellant's mother, the source of the information in the notice, from testifying about the notice to explain its inconsistency with the trial defense. (*Williams v Florida,* 399 US 78; *People v Rivera,* 58 AD2d 147, 45 NY2d 989; *People v Brown,* 98 NY2d 226; *People v Nelu,* 157 AD2d 864; *Brooks v Tennessee,* 406 US 605; *United States v McKeon,* 738 F2d 26; *People v Laing,* 79 NY2d 166; *People v Pelchat,* 62 NY2d 97; *Taylor v Illinois,* 484 US 400; *People v Dawson,* 50 NY2d 311.) II. The court erred in refusing to issue a missing witness charge against the People for their failure to produce Pacasio Beuno, a concededly material witness, where the prosecutor failed to demonstrate that any "diligent efforts" were made to locate him. (*Reid v Senkowski,* 961 F2d 374; *People v Savinon,* 100 NY2d 192; *People v Gonzalez,* 68 NY2d 424; *Graves v United States,* 150 US 118; *People v Kitching,* 78 NY2d 532; *People v Vasquez,* 76 NY2d 722; *People v Robertson,* 205 AD2d 243; *People v Gladden,* 180 AD2d 747; *People v Crimmins,* 36 NY2d 230.) III. The court violated appellant's constitutional and statutory right to be present by excusing a qualified sworn juror "on consent" in appellant's absence. (*People v Buford,* 69 NY2d 290; *People v Harris,* 99 NY2d 202; *People v Roman,* 88 NY2d 18; *People v Mullen,* 44 NY2d 1; *People v Maher,* 89 NY2d 318; *People v Davidson,* 89 NY2d 881; *People v Childs,* 247 AD2d 319; *People v Sprowal,* 84 NY2d 113; *People v Morales,* 80 NY2d 450; *People v Torres,* 80 NY2d 944.)

*Robert T. Johnson, District Attorney,* Bronx (*Yael V. Levy, Joseph N. Ferdenzi* and *Stanley R. Kaplan* of counsel), for respondent. I. Defendant's guilt was proven beyond a reasonable doubt by overwhelming evidence. II. The trial court properly (1) admitted defendant's alibi notice into evidence on the People's rebuttal case, and (2) precluded defendant's mother from testifying about the notice. (*People v Burgos-Santos,* 98 NY2d 226; *Williams v Florida,* 399 US 78; *People v Stephens,* 84 NY2d 990;

*People v Iannelli,* 69 NY2d 684; *People v Whitehead,* 305 AD2d 286, 100 NY2d 600; *People v Thomas,* 210 AD2d 935; *People v Parson,* 268 AD2d 208; *Taylor v Illinois,* 484 US 400; *People v White,* 228 AD2d 209; *United States v Chiavola,* 744 F2d 1271.) III. The trial court properly declined to give a missing witness charge with respect to Pacasio Beuno. (*People v Stephens,* 84 NY2d 990; *People v Keen,* 94 NY2d 533; *People v Gonzalez,* 68 NY2d 424; *People v Savinon,* 100 NY2d 192; *People v Macana,* 84 NY2d 173; *People v Delacruz,* 276 AD2d 387; *People v Escalera,* 220 AD2d 259, 87 NY2d 846; *People v Smith,* 279 AD2d 259, 96 NY2d 835; *People v Vasquez,* 76 NY2d 722; *People v Robertson,* 205 AD2d 243.) IV. Defendant's right to be present at a material stage of his trial was not abridged by his absence from a discussion about a sworn juror's continued fitness to serve. (*People v Dokes,* 79 NY2d 656; *People v Robles,* 86 NY2d 763; *People v Sandoval,* 34 NY2d 371; *People v Metro,* 173 AD2d 282, 79 NY2d 1004; *People v Harris,* 99 NY2d 202; *People v Morales,* 80 NY2d 450; *People v Mullen,* 44 NY2d 1; *People v Aguilera,* 82 NY2d 23; *People v Darby,* 75 NY2d 449; *Snyder v Massachusetts,* 291 US 97.)

### OPINION OF THE COURT

ROSENBLATT, J.

The Legislature has enacted a protocol in connection with alibi defenses in criminal cases. Pursuant to CPL 250.20 (1), the prosecution may compel the defense to serve a notice that spells out the particulars of an intended alibi defense. If a defendant fails to supply the notice or calls a witness not specified in it, the statute gives the trial court discretion to exclude alibi testimony or receive it after granting the prosecution an adjournment (CPL 250.20 [3]). In the case before us, the defense, after disavowing reliance on its alibi notice but not withdrawing it, introduced two alibi witnesses who gave a new alibi relating to a different time frame. Rather than strike their testimony, the court allowed the prosecution to introduce the notice of alibi on its rebuttal case. We agree with defendant that this was error.

### I.

The jury heard evidence that in mid-August 1997, defendant had an altercation with Pacasio Beuno and James Hiciano. Defendant later encountered Beramy Garcia and told him that if defendant were ever to see Garcia with Beuno or Hiciano, he would shoot them all. In the early morning hours of August 28,

1997, Beuno, Garcia and Hiciano were walking together on a public street in the Bronx when a car with no lights cruised slowly by them. From the front passenger seat, defendant fired several shots, wounding all three men. Defendant was eventually apprehended and indicted for the shootings.

Defendant's first lawyer prepared an alibi notice stating that at "the date and time the alleged crime was committed," defendant was at a birthday party on Sheridan Avenue in the Bronx, in the presence of his uncle and another man.[1] The notice did not set forth any dates or times.[2]

During its case, the defense called defendant's girlfriend who testified she was asleep with defendant during the early morning hours of August 28th—when the shooting took place—and that they woke up together at about 10:00 A.M. Defendant did not list her as an alibi witness even though she was obviously furnishing an alibi and a time frame different from the one described in the notice. The People, however, did not object to her direct testimony or ask to have it stricken, nor did they ask for an adjournment to investigate the new alibi.

Partway through his cross-examination of this witness, the prosecutor asserted for the first time that the girlfriend's testimony violated CPL 250.20 and asked for a *Dawson* hearing to probe whether she was justified in withholding exculpatory information (*see People v Dawson*, 50 NY2d 311 [1980]). During the hearing, defendant's attorney told the court that he had been mistaken as to the timing of the alibi and had "just brought back from the Dominican Republic an alibi witness [defendant's uncle] who turns out not to be an alibi witness because I was looking at the wrong date." Although defendant did not withdraw the alibi notice, it became obvious from the girlfriend's surprise testimony that defendant was presenting a new and different alibi covering the early morning hours of

1. According to the subsequent defense counsel, the source of the information in the alibi notice was defendant's uncle who was in the Dominican Republic until mid-January 2000.

2. This alibi notice was dated November 9, 1998. Two days before the trial commenced—and more than a year after the date on the alibi notice—the newly assigned prosecutor asked defendant's subsequent lawyer for a copy of the alibi notice, because the prosecutor "couldn't find [the alibi notice]" in his file. More than 10 days into the trial, as of January 17 or 18, 2000, the prosecutor had still not investigated the notice of alibi, having just received the date of birth and address of the alibi witness. It is clear from this sequence of events that prior to trial the prosecutor neither investigated nor relied on the facts contained in the alibi notice.

August 28th, the time of the actual shootings. Defendant's attorney maintained that only after speaking with defendant's uncle did he realize that former counsel's alibi notice covered the wrong, earlier time span. At the conclusion of the *Dawson* hearing, the court allowed the prosecution to impeach the witness for her failure to come forward earlier.

The defense also called the witness's mother, who on cross-examination by the prosecution corroborated the new alibi. Again, the prosecution did not ask the court to preclude this testimony or seek an adjournment, but used the alibi notice in an attempt to refresh the mother's recollection. Further, on its rebuttal case and over defendant's objection, the prosecution introduced the alibi notice as a "judicial admission" to assail the credibility of defendant's girlfriend and her mother, even though neither made statements contained in the alibi notice.

The prosecutor declined the court's offer to strike defendant's girlfriend's alibi testimony. Both the girlfriend and the girlfriend's mother had already been severely discredited, the former by the *Dawson* hearing and the latter by the prosecutor's use of the conflicting, earlier alibi notice to "refresh her recollection"—even though the notice had no relevance to her testimony. Despite the effective cross-examination of the witnesses, the court further allowed the prosecutor to move the alibi notice into evidence during his rebuttal case.[3] The prosecutor then argued in summation that the notice demonstrated defendant's deceptiveness and consciousness of guilt. The court thus gave the prosecutor a two-fold tactical advantage: first, it allowed him to impeach the credibility of the new alibi witnesses with the notice; it then permitted the prosecutor to offer the notice as evidence of defendant's duplicity.

The jury found defendant guilty of three counts of attempted murder in the second degree (Penal Law §§ 110.00, 125.25) and criminal use of a firearm in the first degree (Penal Law § 265.09). The Appellate Division affirmed, concluding that the use of the alibi notice did not warrant reversal. A Judge of this Court granted leave to appeal. Although we conclude that the use of the alibi notice was error, we affirm because the error was harmless.

---

3. The concurrence suggests that trial counsel did not preserve the argument that CPL 250.20 prohibits impeachment by prior alibi notice (concurring op at 471). We have no difficulty concluding that the 30 pages of argument over the admissibility of the notice preserved the issue for our review.

## II.

CPL 250.20 rests on the premise that in criminal cases a state may impose a limited form of pretrial discovery—in the form of an alibi notice requirement—on defendants without violating their Fifth Amendment and due process rights.[4] The question before us is whether the prosecution may use the notice at trial to discredit the testimony of defendant's witnesses and as evidence of his guilt.

In *People v Burgos-Santos* (98 NY2d 226, 235 [2002]), we held that the People could not use an alibi notice to cross-examine the defendant when the defense had withdrawn the notice before trial.[5] We also recognized the potential unfairness in allowing the prosecution to exploit a withdrawn alibi notice, and that permitting the prosecution to impeach a defendant who had abandoned an alibi defense before trial could have a "fixing" tendency (*id.* at 234), tying the defendant ineluctably to a strategy that, owing to circumstances, might no longer be valid. While we disfavor unprincipled experimentation with trial tactics, we have never held or suggested that it is improper for parties to alter their strategies based on developments during the litigation so long as the opposing party is not prejudiced and there is no evidence of bad faith.

*Burgos-Santos* is instructive but critically different from the case before us. Contrary to the prosecution's contention, it may not be read as authorizing the prosecution to introduce an alibi notice on rebuttal to discredit the testimony of defense witnesses. Here, in contrast to *Burgos-Santos*, the prosecutor did not use the alibi notice to cross-examine defendant, its nominal maker. Instead, after defendant abandoned the notice, the prosecutor introduced it as evidence to rebut the testimony of two defense witnesses and in his summation as evidence of defendant's consciousness of guilt. This is particularly inappropriate where, as here, defendant had a plausible basis for

---

**4.** *See Williams v Florida*, 399 US 78 (1970); *People v Copicotto*, 50 NY2d 222, 229-230 (1980); *People v Burgos-Santos*, 98 NY2d 226, 233 (2002). *See generally* 4 LaFave, Israel and King, Criminal Procedure § 20.4, at 887-908 (2d ed 1999).

**5.** We noted that the applicable Federal Rule of Criminal Procedure precludes impeachment with a withdrawn alibi notice without restricting when a defendant might withdraw (*see Burgos-Santos* at 234-235; Fed Rules Crim Pro rule 12.1 [f]; *see also* Conn Super Ct Rules § 40-25; Mass Rules Crim Pro rule 14 [b] [1] [F]; DC Super Ct Rules Crim Pro rule 12.1 [f]; SD Codified Laws § 23A-9-6).

abandoning the notice, with no claim of bad faith or prejudice to the prosecution.

If we adopted the prosecution's argument, a defendant who serves an alibi notice relying on a particular witness would risk the introduction of the notice if, for some reason, the witness becomes unavailable. Under those circumstances, using the notice as evidence of defendant's guilt could raise constitutional objections. The format projected by CPL 250.20 is carefully balanced, with rights and with remedies designed to redress violations. By authorizing the trial court to exclude alibi testimony (or to receive it after granting a prosecution adjournment), the statute shields the People from trial by ambush. The statute fosters procedural orderliness while protecting against fabricated or surprise testimony. It does not provide for any sanction other than an adjournment for the prosecution or an exclusion, in whole or in part, and we see no basis to allow the sanction imposed: introduction of the alibi notice on the prosecution's rebuttal to discredit the testimony of witnesses other than defendant—witnesses who themselves made none of the statements contained in the alibi notice—and to use the notice affirmatively as evidence of guilt.

The prosecutor did not pursue a statutory remedy. Instead of raising the appropriate objection and availing himself of a CPL 250.20 (3) remedy (exclusion or adjournment to investigate), the prosecutor sat by, failing to object as the defense elicited more than 30 pages of trial transcript from a witness to an alibi for which no notice had been given.[6] When the prosecutor finally raised the issue while cross-examining defendant's girlfriend, he asked not for exclusion or an adjournment—which the court would have been compelled to grant before receiving testimony—but for a *Dawson* hearing, on which he prevailed. Having declined to seek a correct remedy, the prosecution cannot avail itself of an incorrect one.

Three of our colleagues would hold that the trial court properly admitted the alibi notice as evidence. We disagree. The statute offers two remedies. In its discretion, the trial court may preclude the alibi testimony (in whole or part) or it may receive it, provided the court first gives the prosecution a chance—an adjournment of not more than three days—to

---

**6.** Indeed, on these facts, it is difficult to see how the prosecutor was prejudiced by the disavowal of the alibi notice (concurring op at 473). On the eve of trial the prosecutor had not even seen the alibi notice, and partway through trial he had not even investigated it.

investigate. What the statute does *not* permit is the sanction the court allowed here. Despite the suggestion in the concurrence, our holding does not chill defendant's constitutional right to present a defense. The trial court could have allowed the alibi defense following an adjournment. We conclude, however, that neither the statute nor the rules of evidence supported the court's ruling here. We find it odd of our concurring colleagues to justify their affirmance based on the *absence* of error and to then characterize such an affirmance as somehow more protective of defendant's constitutional rights. Indeed, an affirmance in which we condone the misuse of the alibi notice could carry its own constitutional objections.[7]

Notwithstanding the improper introduction of the alibi notice, we do not believe this case merits reversal. There was overwhelming evidence of guilt, including the eyewitness testimony of two victims and his own announced intention to shoot the victims.[8] We therefore conclude that the error was harmless (*see People v Crimmins*, 36 NY2d 230, 242 [1975]).

We have considered defendant's remaining contentions and find them without merit. Accordingly, the order of the Appellate Division should be affirmed.

GRAFFEO, J. (concurring). I would affirm the order of the Appellate Division because I conclude that the trial court did not abuse its discretion in allowing the introduction of evidence by both parties in this case.

After defendant was arrested and charged with attempted murder for allegedly shooting three people, his attorney prepared a notice of alibi pursuant to CPL 250.20[1] indicating that defendant was attending a birthday party at the time and date

---

**7.** In support of an *affirmance*, our concurring colleagues go so far as to aver that the preclusion of unnoticed alibi testimony may be unconstitutional—an argument that not even defendant has made. This issue is therefore not before us. Defendant raises no constitutional claims in this appeal.

**8.** We note that defense counsel, on realizing the mistake in the alibi notice, should have notified the court of the dilemma. Instead, in violation of section 250.20, the defense said nothing and elicited from defendant's girlfriend a line of testimony that furnished defendant with a brand new alibi. Had the defense acted properly and aired the issue in limine, the court could have heard both sides and exercised its discretion appropriately.

**1.** The statute provides that, upon demand by the People, the defendant must serve "a 'notice of alibi,' reciting (a) the place or places where the defendant claims to have been at the time in question, and (b) the names, the residential addresses, the places of employment and the addresses thereof of every

of the shootings. During the trial, defendant's new counsel advised the People not to rely on the notice of alibi. Counsel claimed that the notice of alibi had been composed by his predecessor under the mistaken belief that the crime occurred at the same time as the party defendant purportedly attended when, in fact, the crime occurred approximately 18 hours earlier.

A revised alibi defense was introduced at trial when defense counsel called defendant's girlfriend to testify. She told the jury that defendant had been present at her home on the night in question. At this point, the prosecutor asserted that defendant had violated CPL 250.20 by presenting an alibi witness who was not identified in the notice of alibi.[2]

Although the prosecutor appropriately cited CPL 250.20, he apparently determined that it would be advantageous to impeach the new alibi evidence with the information stated in the prior notice. The prosecutor therefore did not seek to strike or preclude the testimony of defendant's girlfriend, and did not attempt to introduce the notice of alibi during his cross-examination of the girlfriend or otherwise question her about how her recollection contradicted the notice of alibi. Nor did the People use the alibi notice to undermine the new defense during the testimony of the girlfriend's mother, who stated she was also present in the home with defendant on the night of the shootings. Instead, the prosecutor used the notice of alibi in an attempt to refresh the mother's recollection, without revealing the nature or contents of the document to the jury.

It was only after all of the defense witnesses testified that the prosecutor sought to introduce the alibi notice into evidence as part of the People's rebuttal case for the purpose of impeaching the alibi evidence. Although defense counsel objected to the admission of the notice in evidence, the court ultimately allowed the People to use the notice of alibi but, to stem the possibility of unwarranted prejudice to defendant, instructed the jury that the notice was introduced for the sole purpose of

such alibi witness upon whom [the defendant] intends to rely." (CPL 250.20 [1].)

2. CPL 250.20 (3) states: "If at the trial the defendant calls such an alibi witness without having served the demanded notice of alibi, or if having served such a notice he calls a witness not specified therein, the court may exclude any testimony of such witness relating to the alibi defense. The court may in its discretion receive such testimony, but before doing so, it must, upon application of the people, grant an adjournment not in excess of three days."

impeaching the alibi defense and not as direct evidence of defendant's guilt.[3]

The question now presented is whether the trial court abused its discretion in determining that defendant should be permitted to offer new alibi evidence, despite his violation of CPL 250.20, while also allowing the People to address the discrepancy between defendant's notice of alibi and the alibi testimony by introducing the written notice into evidence. The majority concludes that the trial court erred in admitting the notice of alibi as evidence in rebuttal to the new defense. I disagree.

First, the argument the majority adopts—that impeachment with the notice of alibi was prohibited by CPL 250.20—was not made to the trial judge. Instead, defense counsel indicated to the court that it was "discretionary, that the document be allowed in." Thus, the majority's position—that trial courts do not have such discretion—is not properly before us.

Second, the statute clearly authorizes a trial court to consider alternatives that further the truth-seeking function of the trial. CPL 250.20 (3) states that a court *"may* exclude" the testimony of an unnoticed alibi witness (emphasis added) and it "may" alternatively allow unnoticed alibi evidence to be presented to the jury after affording the People a reasonable adjournment to investigate the defense. The permissive nature of the statute indicates that the Legislature intended to provide a trial judge with appropriate latitude in deciding the extent of sanctions or how to otherwise address a request to introduce an eleventh-hour alibi. Even if the statute's language does not allow for such a permissive interpretation, I believe, as addressed below, such an interpretation is required by the Constitution.

Nor is the majority's analysis compelled by our recent decision in *People v Burgos-Santos* (98 NY2d 226 [2002]). We recognized that a notice of alibi cannot be used as an "informal judicial admission" to impeach the accused if the notice (1) is withdrawn before trial and (2) the defendant "elect[s] not to present an alibi defense at trial" (*id.* at 232, 235). The rationale

---

**3.** In light of the court's limiting instruction, it is inaccurate to claim that the People were permitted "to use the notice affirmatively as evidence of guilt" (majority op at 468; *see id.* at 467, 467-468). The jury was told that the notice was "to be considered by you as to whether the People have or have not disproved the defense of alibi. . . . It's not to be considered by you in the ultimate issue of guilt or innocence, only to be considered by whether the People have or have not proven the defendant's position of alibi. And that's the only purpose for that exhibit to be admitted."

underlying this principle is straightforward—if a defendant chooses not to present an alibi defense, no violation of CPL 250.20 occurs; the notice, therefore, is neither material nor relevant to any issue in the case because there is nothing to impeach and any question concerning the defendant's compliance with statutory obligations is academic.

But defendant in this case stands before us in an admittedly different posture than the defendant in *Burgos-Santos*. Here, defendant chose to present an alibi defense that conflicted with the information he provided to the People. He injected a new alibi into the case and failed to withdraw the previous notice. Thus, unlike the *Burgos-Santos* scenario, in this case we have a clear violation of CPL 250.20 that rendered the credibility of the alibi defense a material issue.[4]

The inadmissibility of the notice of alibi in *Burgos-Santos* was premised on two considerations that are not present in this case: that impeachment using a withdrawn notice against a defendant who does not assert an alibi defense at trial will "undermine the truth-seeking function that notice of alibi statutes were designed to foster" by "inhibit[ing] a defendant from abandoning a factually inaccurate defense posture" (*id.* at 235); and that the use of a withdrawn notice could "potentially implicate[ ] Fifth Amendment and due process concerns" (*id.* at 234) by locking a defendant into a particular defense at an early stage in the criminal justice process. In the case before us, the People's use of the notice of alibi certainly did not inhibit defendant from abandoning the alibi he initially claimed. To the contrary, defendant, knowing that the notice allegedly was factually inaccurate and notwithstanding the possibility of preclusion under CPL 250.20, presented a contradictory explanation of his whereabouts. Because defendant was not "fixed" to the alibi he earlier noticed (*id.*), and to the extent any prejudice to him was caused by his failure to timely withdraw the notice, this case does not give rise to the Fifth Amendment implications that informed the result in *Burgos-Santos*.

In my view, the majority's application of CPL 250.20 may unduly restrict an accused's right to present a defense and

---

**4.** The majority's concern that "a defendant who serves an alibi notice relying on a particular witness would risk the introduction of the notice if, for some reason, the witness becomes unavailable" (majority op at 468) is unwarranted. Unlike this case, a defendant in that situation presumably would not be presenting a new, unnoticed alibi defense in violation of CPL 250.20. I agree that, in such a situation, introduction of the notice into evidence most likely would be inappropriate, just as it was in *Burgos-Santos*.

therefore stands on dubious constitutional footing in light of an accused's Sixth Amendment rights. In a case such as this, where defendant first asserted his new alibi defense approximately 2½ years after the crime and relied on testimony by his girlfriend and her mother, providing the People with a short adjournment to investigate defendant's new claims may well have been useless, leaving preclusion of all alibi testimony as the only remedy available under the majority's rule. Although the Federal Constitution does not prohibit preclusion of defense evidence as a sanction or remedy for the violation of a discovery rule (*see Taylor v Illinois*, 484 US 400 [1988]), the United States Supreme Court has characterized preclusion as a "severe sanction" that "unquestionably implicates the Sixth Amendment" (*Michigan v Lucas*, 500 US 145, 153, 149 [1991]). The Supreme Court has, in fact, rejected the notion that "the imposition of a discovery sanction that entirely excludes the testimony of a material defense witness" will never offend the Sixth Amendment (*Taylor v Illinois*, 484 US at 409). The concept that emerges from this precedent is that, depending on the situation, preclusion of defense evidence may be justified, but in most cases lesser, "alternative sanctions would be 'adequate and appropriate' " (*Michigan v Lucas*, 500 US at 152, quoting *Taylor v Illinois*, 484 US at 413). Under the circumstances of this case, the preclusion of all alibi testimony would have prejudiced the rights of defendant.

In fact, this case highlights the constitutional difficulties inherent in the rule announced today. According to the majority, the People would have been entitled to preclusion of all alibi evidence offered by defendant, even though there was, as the majority recognizes, "a plausible basis for abandoning the notice, with no claim of bad faith or prejudice to the prosecution" (majority op at 467-468). Defense counsel explained that the discrepancy between the alibi notice prepared before trial and the alibi presented at trial was attributable to a mistake by defendant's former counsel, who apparently believed that the shootings occurred at the same time as the party when, as later discovered, the party began later in the evening on the day of the shootings. If the trial court had precluded the alibi evidence, defendant would have been left with no viable defense to explain his whereabouts at the time of the crime. Rather than imposing such a severe and prejudicial hardship on defendant, the trial court charted a more balanced course, allowing both parties to

present their version of the evidence as to defendant's whereabouts at the time of the crime. On this record, it cannot be said that the court abused its discretion by failing to impose on defendant the most extreme sanction allowed by law, especially when that remedy was never requested by the People.

Chief Judge KAYE and Judges G.B. SMITH and CIPARICK concur with Judge ROSENBLATT; Judge GRAFFEO concurs in result in a separate opinion in which Judges READ and R.S. SMITH concur.

Order affirmed.