2008-NMCA-022

176 P.3d 1169

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Patrick O'NEAL, Defendant–Appellant.**

**No. 25,710.**

Court of Appeals of New Mexico.

Dec. 11, 2007.

Certiorari Denied, No. 30,840,
Feb. 1, 2008.

Gary K. King, Attorney General, Santa Fe, NM, James W. Grayson, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Vicki W. Zelle, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

BUSTAMANTE, Judge.

{1} Defendant Patrick O'Neal (Defendant) appeals his convictions for unlawful killing of deer and unlawful possession of deer. The district court allowed the State to introduce evidence at trial regarding Defendant's notice of alibi, which is expressly forbidden under Rule 5–508(E) NMRA. The questions presented in this case are: (1) whether Defendant preserved his claim of error under Rule 5–508(E); (2) whether the district court erred in allowing the State to introduce the evidence regarding Defendant's notice of alibi and, if so, whether that error was harmless; and (3) whether the district court erred in refusing to grant Defendant's motion for a mistrial. We affirm.

## BACKGROUND

{2} On March 9, 2004, an officer of the New Mexico Department of Game and Fish filed a complaint against Defendant in Eddy County magistrate court. The complaint charged Defendant with one count of hunting with the aid of artificial light, contrary to NMSA 1978, § 17–2–31 (1951) (amended 2007), three counts of unlawful killing of deer, contrary to NMSA 1978, § 17–2–7 (1979), and three counts of unlawful possession of deer, contrary to NMSA 1978, § 17–3–33 (1979).

{3} The complaint alleged that, on November 22, 2003, Defendant and two accomplices went hunting in Defendant's truck. On their way returning to Carlsbad, the group encountered several deer in the road. The area was closed to deer hunting at that time and none of the men had a hunting license. Defendant pulled his truck off to the side of the road and shined his headlights toward the deer in the brush. The men killed three doe mule deer, loaded them into Defendant's truck and took them to the house of Carlos Hernandez in Carlsbad. The men butchered the deer in a metal shed that belonged to Mr. Hernandez and later threw the carcasses and other deer parts onto a city street. The complaint further alleged that confidential informants pointed to Defendant as being one of the men responsible for killing the deer and leaving them in the street. Addi-

tionally, both of the men who accompanied Defendant in killing and disposing of the deer admitted that they were present with Defendant when the foregoing events took place.

{4} Defendant was found guilty in the magistrate court and appealed his judgment and sentence to the district court. Defendant submitted a notice of alibi prior to trial that identified two potential alibi witnesses. The notice of alibi indicated that Defendant was with John Brazeal and another person at Mr. Hernandez's house while the alleged crimes were being committed. However, Mr. Brazeal failed to show up at defense counsel's office to accept service of a subpoena and did not testify at the trial.

{5} Nevertheless, defense counsel stated during voir dire that the defense expected to call Mr. Brazeal as a witness. Following voir dire, the prosecutor stated his intent to address Defendant's claimed alibi during his opening statement. Defense counsel made no objection to the prosecutor's proposed reference to Mr. Brazeal during opening statements.

{6} The prosecutor stated the following during his opening statement:

Ladies and gentlemen, the State has been put on notice that the defense in this case will be an alibi—I wasn't there. It wasn't me. I was not with them when these crimes were committed. And a John Brazeal and a Casey Nunley have been listed as potential witnesses to establish that it was not Patrick O'Neal who was involved in these cases. We'll see if they show up.

Defense counsel did not object to the prosecutor's references to Defendant's alibi defense and Mr. Brazeal. However, defense counsel did not refer to Mr. Brazeal during his own opening statement, even though he asserted generally that Defendant was not present when the crimes took place.

{7} During the State's case-in-chief, the prosecutor called one of the men accused of killing the deer and asked him if Mr. Brazeal was with him and Defendant when they killed the deer. The witness said that Mr. Brazeal was not there and defense counsel made no objection. On the following day, the prosecutor asked another witness how he knew Mr. Brazeal. After the witness re-

sponded, the prosecutor stated, "In a document filed with this court—." Defense counsel objected and a bench conference ensued.

{8} The prosecutor argued that he should be able to quote from the notice of alibi in the same way the defense is allowed to quote from a complaint. Defense counsel argued that the notice of alibi was a representation by counsel, not a statement by Defendant. The prosecutor responded that the notice of alibi was essentially an admission by Defendant and therefore was not hearsay. The district court overruled the objection and allowed the prosecutor to proceed.

{9} The prosecutor then asked the witness the following:

Q: Mr. Fraser, in a document filed with this Court, [Defendant] has stated that he was present at Mr. Hernandez's ... house when you and Mr. Faulkner arrived with the deer in [Defendant's] pickup. Is that true?

A: No.

Q: [The notice of alibi] also states that [Defendant] was not with you when you and Mr. Faulkner unlawfully shot and killed these deer. Instead, he was at [Mr. Hernandez's] house watching movies with John Brazeal.

A: That's also not true.

{10} Shortly thereafter, the district judge held another bench conference in which the judge read to counsel Subsection E of Rule 5–508, which states: "The fact that a notice of alibi was given or anything contained in such notice shall not be admissible as evidence in the trial of the case." Rule 5–508(E). Defense counsel immediately moved for a mistrial. The prosecutor argued that his reference to the notice of alibi did not prejudice Defendant because, even though Mr. Brazeal was not present to testify, the defense theory of the case continued to be that Defendant was not present during the commission of the crimes. Defense counsel responded that the prosecutor's references to Mr. Brazeal essentially forced Defendant either to be silent or to call a witness that the defense might not wish to call, which amounted to prejudice. Defense counsel later added that the prosecutor should not be

allowed to impeach Defendant from the notice of alibi, which contained statements from counsel and not Defendant himself, thereby forcing Defendant to testify in order to answer questions about those statements. The district court denied Defendant's motion for a mistrial and decided instead to admonish the jury to disregard the evidence regarding the notice of alibi.

{11} Nevertheless, the prosecutor continued to question witnesses about Mr. Brazeal. For example, the prosecutor asked Mr. Hernandez a series of questions about Mr. Brazeal on direct examination. Defense counsel objected and the district court allowed the questioning to continue. Additionally, the prosecutor elicited from Defendant during his testimony that he was with Mr. Brazeal at Mr. Hernandez's house on the day of the incident. Another bench conference ensued and defense counsel again moved for a mistrial, arguing that the prosecutor's persistence in repeatedly asking about Mr. Brazeal amounted to prosecutorial misconduct. The district court again denied the motion for a mistrial, but cautioned the prosecutor to avoid asking further questions about Mr. Brazeal. The court later gave the jury the following written instruction:

Information was presented concerning a document that was filed with this Court, by the Defendant, alleging that the Defendant was not with Derrick Faulkner and Kasey Frasier on November 22, 2003 when Faulkner unlawfully shot and killed deer, and that the defendant was present at Carlos Hernandez' house when Derrick Faulkner and Kasey Frasier arrived with the deer in the Defendant's pick-up.

After this information was presented you were admonished that you should not consider the document or the allegations contained therein for any purpose.

You are again instructed that you should not consider this information for any purpose.

{12} The jury convicted Defendant of two counts of unlawful killing of deer and three counts of unlawful possession of deer. The district court sentenced Defendant to thirty months incarceration, which the district court suspended in favor of supervised probation for that time period, and imposed fines totaling two thousand dollars. Defendant timely appealed from the district court's judgment and sentence.

{13} Defendant presents two issues on appeal. First, Defendant argues that the district court committed reversible error by allowing the prosecutor to introduce evidence regarding Defendant's notice of alibi, which incurably prejudiced the defense. Second, Defendant asserts that the district court abused its discretion in refusing to grant a mistrial in light of the prosecutor's misconduct. The State responds by arguing that Defendant failed to preserve his claim of error because he failed to object specifically at trial that the State had violated Rule 5–508(E). The State further contends that the district court did not err in refusing to grant a mistrial because Defendant failed to establish that the court's instructions to the jury did not fully cure any error that may have occurred. For the reasons set forth below, we hold that the district court erred in allowing the evidence regarding Defendant's notice of alibi, but that the error was harmless.

## DISCUSSION

### 1. Defendant Preserved His Claim of Error Under Rule 5–508

{14} Rule 12–216(A) NMRA requires that a ruling by the district court be "fairly invoked" in order to preserve an issue for appellate review. The State is correct that Defendant did not initially object to the prosecutor's proposed question regarding the notice of alibi on the ground that the admission of such evidence would violate Rule 5–508. Instead, defense counsel objected on the ground that the notice of alibi was a statement by counsel and not Defendant. It was not until the district court later alerted the parties to the applicability of Rule 5–508(E)—after the district court had already allowed the evidence regarding the notice of alibi to come in—that defense counsel began to make arguments on the basis of that rule. Nevertheless, the district judge took action in response to his concerns about Rule 5–508, including admonishing the jury to disregard the evidence relating to the notice of alibi and providing a written jury instruction to the same effect. Therefore, while Defendant may not have timely objected in order to prevent the evidence regarding the notice of

alibi to come in, Defendant's later arguments regarding whether the district court could properly cure its error under Rule 5–508, and the district court's response to those arguments, were sufficient to preserve the issue for appellate review.

## 2. The District Court Erred by Allowing Evidence Regarding Defendant's Notice of Alibi

{15} Rule 5–508 requires that, upon written demand from the State, a criminal defendant who intends to assert an alibi defense must provide the State with written notice of that intent. Rule 5–508(A). The notice "shall contain specific information as to the place at which the defendant claims to have been at the time of the alleged offense and ... the names and addresses of the witnesses by whom the defendant proposes to establish an alibi[.]" Rule 5–508(B). Rule 5–508 is a pretrial discovery device that "insur[es] both the defendant and the state ample opportunity to investigate certain facts crucial to the determination of guilt or innocence." *State v. Watley,* 109 N.M. 619, 622, 788 P.2d 375, 378 (Ct.App.1989).

{16} The United States Supreme Court has held that statutes requiring the accelerated disclosure of an alibi defense do not violate a defendant's Fifth Amendment privilege against self-incrimination. *Williams v. Florida,* 399 U.S. 78, 83, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). The Court noted that "[n]othing in such a rule requires the defendant to rely on an alibi or prevents him from abandoning the defense; these matters are left to his unfettered choice." *Id.* at 84, 90 S.Ct. 1893.

{17} However, allowing the State to impeach a defendant using statements from the notice of alibi may limit the defendant's freedom to abandon his alibi defense. *People v. Brown,* 98 N.Y.2d 226, 746 N.Y.S.2d 422, 774 N.E.2d 186, 190 (2002). "[S]uch use of statements contained in a notice of alibi potentially implicates Fifth Amendment and due process concerns[.]" *Id.* at 191. In *Brown,* the New York Court of Appeals concluded "that the prosecution should not be permitted to impeach a defendant who has elected not to present an alibi defense at trial with statements contained in a notice of alibi withdrawn before trial." *Id.* In support of its

conclusion, the Court cited to the Federal Rules of Criminal Procedure, which provide that "[e]vidence of an intention to rely upon an alibi defense, later withdrawn, or of statements made in connection with such intention, is not ... admissible against the person who gave notice of the intention." *Id.* (alternation in original) (internal quotation marks and citation omitted); *accord* Fed.R.Crim.P. 12.1(f).

{18} As noted above, Subsection E of Rule 5–508 contains a similar provision: "The fact that a notice of alibi was given or anything contained in such notice shall not be admissible as evidence in the trial of the case." Rule 5–508(E). One difference between Rule 5–508(E) and its federal counterpart, however, is that Rule 5–508 makes no reference to whether the defendant has withdrawn his or her alibi defense before the State attempts to introduce it as evidence. Therefore, Rule 5–508(E) appears to have a broader sweep than the federal rule in that Rule 5–508(E) applies regardless of whether the defendant has elected to abandon his or her alibi defense.

{19} Given the clear language of Rule 5–508(E), we conclude that the district court erred in allowing the State to introduce evidence regarding Defendant's notice of alibi. With the district court's permission, the prosecutor explicitly referenced the notice of alibi and its contents while examining a witness in the presence of the jury. We now turn to the questions of: (1) whether Defendant suffered prejudice as a result of the error, and (2) if so, whether the district court's curative instructions were sufficient to overcome that prejudice.

## 3. The District Court's Error Was Harmless

{20} Consistent with the foregoing discussion, Defendant claims that the State's violation of Rule 5–508(E) prejudiced him in that it limited his right to choose his defense. In contrast, the State asserts that Defendant did not suffer prejudice because he never withdrew his notice of alibi and instead maintained his defense that he was not present during the commission of the crimes. We agree with the State.

**442**

{21} "Error in the admission of evidence is not harmless if there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *State v. Soto*, 2007–NMCA–077, ¶ 19, 142 N.M. 32, 162 P.3d 187 (internal quotation marks and citation omitted). Ordinarily, we make this determination by following a three-part inquiry:

(1) substantial evidence must exist to support the conviction without including the improperly admitted evidence, (2) a disproportionate volume of permissible evidence must exist such that the improper evidence will appear so minuscule that it could not have contributed to the conviction, and (3) no substantial conflicting evidence can exist to discredit the State's permissible testimony.

*Id.* ¶ 22 (internal quotation marks and citation omitted). However, "[w]here the improperly admitted evidence is cumulative of properly admitted evidence ... the three steps are usually not separately analyzed." *State v. Gutierrez*, 1998–NMCA–172, ¶ 11, 126 N.M. 366, 969 P.2d 970.

{22} The evidence regarding Defendant's notice of alibi was cumulative of properly admitted evidence, i.e., Defendant's own testimony. Defendant testified that he was at Mr. Hernandez's house with Mr. Brazeal when the crimes took place, which was consistent with the information that the State revealed from his notice of alibi. Therefore, Defendant's testimony merely confirmed what the jury already heard with respect to the notice of alibi.

{23} .While Defendant argues on appeal that the State's violation of Rule 5–508(E) forced him to testify, this argument is without merit because Defendant never abandoned his alibi defense. From the beginning of the case, the theory of the defense was that Defendant was not with the men who admitted to killing and gutting the deer. Defense counsel stated his intention to call Mr. Brazeal, both in the notice of alibi and during voir dire, and never indicated that the defense would not be relying on an alibi theory. To the contrary, defense counsel stated during his opening statement that Defendant was not present when the crimes took place and did not object to the prosecutor's opening statement that referenced the alibi defense and Mr. Brazeal.

{24} It was not until the prosecutor began to reference explicitly the notice of alibi during its case in chief that defense counsel decided to object. However, defense counsel's objection was not that admission of evidence regarding the notice of alibi would violate Rule 5–508(E). Instead, the objection was that the notice of alibi was a statement by counsel and not Defendant. Therefore, defense counsel ultimately argued, the State should not be allowed to use the notice of alibi to impeach Defendant because that would essentially force Defendant to take the stand to clarify the record.

{25} Defense counsel's argument does not square with the fact that the defense's theory of the case never switched from alibi to some other defense. In light of the fact that the defense did not provide any witnesses to corroborate the alibi theory, it seems that Defendant would have had to testify in order to get any affirmative evidence of his alibi in front of the jury. Moreover, even if Defendant had intended to put some other evidence of his alibi forward—and the record does not indicate what that evidence would be—there is no indication that such evidence would not also be consistent with the information contained in the notice of alibi.

{26} Furthermore, even if defense counsel had intended to change his theory of the case from alibi to some other defense, he could have manifested that intent in order to prevent the State from attacking the alibi theory in its case-in-chief. Defense counsel could have accomplished this by withdrawing the notice of alibi or by objecting at the first instance of the prosecutor's suggestion that the defense would be alibi. Under those circumstances, i.e., when a defendant has withdrawn his or her alibi defense, the impact of a Rule 5–508(E) violation becomes much more egregious. *See Brown*, 774 N.E.2d 186, 190–91. Although Rule 5–508(E) applies regardless of whether the defendant has withdrawn his or her alibi defense, the fact of withdrawal bears a substantial relationship to the amount of prejudice that results from a violation of the rule. *Cf. State v. Curby*, 553 S.W.2d 566, 569 (Mo.Ct.

App.1977) (holding that, where defendant filed a notice of alibi but manifested an intent to rely on another theory during opening statement, prosecutor's objection mentioning the notice of alibi in front of the jury was "so prejudicial that [its] effect could not have been erased by an admonition by the court"). In the present case, Defendant manifested a commitment to his alibi defense well before and well after the State improperly introduced the evidence regarding the notice of alibi.[1] Given these circumstances, we conclude that there is not a reasonable possibility that the evidence regarding the notice of alibi contributed to Defendant's convictions.

{27} In light of our conclusion that Defendant did not suffer prejudice, we need not address the sufficiency of the district court's curative instructions to the jury. We now turn to the question of whether the district court abused its discretion by refusing to grant a mistrial.

4. **The District Court Did Not Abuse Its Discretion by Refusing to Grant a Mistrial**

{28} Defendant asserts that the State committed prosecutorial misconduct by violating Rule 5–508(E) and by repeatedly referring to Defendant's alibi through questions regarding Mr. Brazeal. Defendant argues that this misconduct necessitated a mistrial. We review a district court's denial of a motion for mistrial for an abuse of discretion. *State v. McDonald,* 1998–NMSC–034, ¶ 26, 126 N.M. 44, 966 P.2d 752.

{29} "Prosecutorial misconduct occurs when the prosecutor's improprieties had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *State v. Cortez,* 2007–NMCA–054, ¶ 30, 141 N.M. 623, 159 P.3d 1108 (internal quotation marks and citation omitted), *cert granted,* 2007–NMCERT–005, 141 N.M. 763, 161 P.3d 260. Defendant's argument that the prosecutor's repeated references to his alibi theory constituted prosecutorial misconduct is premised on Defendant's understanding of the Rule 5–508(E) violation as having prejudiced him.

However, we have already stated that the violation constituted harmless error because the evidence regarding the notice of alibi was consistent with Defendant's alibi theory and therefore was not prejudicial. Because Defendant never abandoned his alibi defense, the State was entitled to challenge Defendant's alibi theory so long as it refrained from referring to the notice of alibi. Defendant has failed to point to anything in the record demonstrating that the State committed any other "improprieties," much less ones that had a persuasive and prejudicial effect on the jury. Accordingly, we cannot say that the district court abused its discretion in refusing to grant a mistrial.

**CONCLUSION**

{30} For the foregoing reasons, we affirm the district court's judgment.

{31} **IT IS SO ORDERED.**

I CONCUR: CYNTHIA A. FRY, Judge.

RODERICK T. KENNEDY, Judge, dissenting.

KENNEDY, Judge (concurring in part and dissenting in part).

{32} I concur with the majority that to allow the prosecutor's repeated reference to Defendant's notice of alibi and the name of the purported alibi witness was error. Unfortunately, this is a case where the only answer to the question of what the proper result would have been is to allow the trial to end without putting improper evidence before the jury. Since I cannot fairly state that the pinning of the notice of alibi and its witness to the defense well in advance of the defense's case did not appreciably affect the verdict, I will not agree that the error upon which we agree was harmless. *See State v. Lopez,* 2007–NMCA–049, ¶ 15, 142 N.M. 613, 168 P.3d 743 (holding that harmless error occurs when there is "no reasonable possibility that the evidence complained of might have contributed to the [defendant's] convictions" (alteration in original) (internal quotation marks and citation omitted)).

---

1. We are not persuaded that the record supports the Dissent's assertion that Defendant "es-

chewed" his alibi defense. *See* Dissent ¶ 45.

{33} I take a different view of the facts than do the majority. Specifically, the prosecutor, not the defense, was the big pusher of Mr. Brazeal's name. Second, the defense case was cumulative of the State's adducing evidence of the notice of alibi and its contents, not the other way around. This case highlights the constitutional problems that may arise in the application of Rule 5–508 NMRA and is a case of first impression in interpreting Section (E) of the Rule.

{34} The State brought Mr. Brazeal's name before the jury in the opening moments of voir dire, asking if he had been found; the defense responded that it expected to call him as a witness. The prosecutor mentioned Mr. Brazeal two more times in voir dire, to each row of prospective jurors. In his opening statement, the prosecutor was quite frank about Mr. Brazeal's value: "Ladies and gentlemen, the State has been put on notice that the defense in this case will be an alibi ... [a]nd a John Brazeal ha[s] been listed.... We'll see if [he shows] up." This elicited no objection from the defense. Later in his opening statement, the prosecutor disclosed that he expected one of the co-defendants to testify that he and Defendant were at Mr. Brazeal's house when Defendant attempted to get Mr. Brazeal's help in casting suspicion away from Defendant and his two accomplices. Defendant's opening statement characterized the co-defendants as a liar and a person with a faulty memory, but never mentioned Mr. Brazeal, or an alibi. In fact, Mr. Brazeal was never produced as a witness at trial.

{35} At trial, the prosecutor questioned Defendant's accomplice, Derrick Faulkner, about Mr. Brazeal, referencing a conversation in which Defendant had asked Mr. Brazeal to help make up a story for the police on his behalf. The direct examination of the other accomplice, Mr. Fraser, developed evidence that Defendant had asked Mr. Fraser to lie to the police for him. Later, the prosecutor, using the notice of alibi, and after the defendant's objection to the use of the notice was overruled, asked:

Mr. Fraser, in a document filed with this [c]ourt, the Defendant ... has stated that he was present at Mr. Hernandez's ... house when you and Mr. Faulkner arrived with the deer in his pickup. Is that true?

. . . .

It also states that he was not with you when you and Mr. Faulkner unlawfully shot and killed these deer. Instead, he was at [Mr. Hernandez's] house watching movies with John Brazeal.

{36} In the course of Defendant moving for a mistrial, the prosecutor explained his position: "[W]e're allowed to get into things that the [d]efense is going to put on as a defense. [Defense counsel] called this witness in the voir dire section of this trial, and he's not going to produce him." The State offered to get Mr. Brazeal and bring him in to testify, stating that they had talked to Mr. Brazeal and that he would not be a good witness for the defense.

{37} Defendant responded that the prosecution had

brought up issues that are supposed to be reserved for our case. We can choose to use those issues or not. [The State] can't. What he's done is he's forcing us to either be silent so he can argue to the jury that we never produced this witness ... or we have to call this witness we may have decided is not a good witness to call.

The court gave a curative instruction to the jury that the prosecutor's mention of the alibi should be disregarded.

{38} Mr. Hernandez was the next witness to testify. At the point where the prosecutor began to question him about Mr. Brazeal, the defense again objected. The court allowed the question; Mr. Hernandez testified that Mr. Brazeal had not been at his house at the time of the crime. Again, the prosecutor relied on the voir dire disclosure of Mr. Brazeal, incorrectly stating, "[w]hen I called my witnesses before this jury panel, I never identified John Brazeal."

{39} Again in argument to the court, the defense pointed out that the State should not be able to chip at an alibi defense that has not been presented. The defense also pointed out that while it is good practice to identify potential witnesses to avoid problems in voir dire, the defense had not mentioned any alibi in their opening statement, nor had his opening stated that Defendant was not there.

The defense stated that it did not intend to call Mr. Brazeal as a witness.

{40} When Defendant took the stand, he did not testify on direct examination that he had been with Mr. Brazeal or anyone else. His defense was simply that he was not present with the others. It was the prosecutor who on cross-examination demanded of Defendant who was with him when he was at Mr. Hernandez's house, which brought another objection from the defense, and a judicial admonition to leave Mr. Brazeal's name out of the examination when Defendant revealed it.

### The Error Was Not Harmless

{41} Here, the notice of alibi was flogged before the jury long before Defendant testified. It should be a

> rare situation where it would be appropriate for a prosecutor to comment on anticipated defense evidence because a defendant is under no obligation to put forward evidence on his or her own behalf.... [W]hen the prosecution raises the spectre of a flawed alibi and the defendant chooses not to offer any alibi evidence, it may well leave the jury with an unfavorable impression of the defendant.

*United States v. Hall,* 165 F.3d 1095, 1115 (7th Cir.1999).

{42} A notice of alibi is a testimonial disclosure by the defense. *See Williams,* 399 U.S. at 83, 86 n. 17, 90 S.Ct. 1893. In this case, as the majority points out, the prosecutor argued precisely that—the notice of alibi was an admission by the Defendant. Majority Opinion ¶ 1173. For the prosecution to comment that a defendant has filed such a notice before the defendant testifies is a comment on that defendant's right to remain silent, raising Fifth Amendment concerns. *People v. Hunter,* 95 Mich.App. 734, 291 N.W.2d 186, 188 (1980). The rule requiring the filing of a notice of alibi upon the prosecutor's demand does not exist "to alert the jury of the defendant's proposed defense." *People v. Shannon,* 88 Mich.App. 138, 276 N.W.2d 546, 549 (1979).[2] In fact, the United States Supreme Court has stated that "[n]otice-of-alibi rules ... are based on the proposition that the ends of justice will best be

served by a system of liberal discovery which gives both parties the maximum possible amount of information with which to prepare their cases and thereby reduces the possibility of surprise at trial." *Wardius v. Oregon,* 412 U.S. 470, 473, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973). However, if a defense witness testifies to facts different than those contained in the notice of alibi, he or she may be cross-examined on the variance, same with the defendant, should he or she testify. *People v. Lowe,* 969 P.2d 746, 749 (Colo.Ct.App. 1998).

{43} Here, well before the defense began its case presentation, the prosecutor was improperly boxing in the defense by repeatedly stating Defendant had filed a pleading asserting an alibi of which Mr. Brazeal was a part. Permitting the prosecution to exploit a notice of alibi could tie a defendant "ineluctably to a strategy that, owing to circumstances, might no longer be valid." *People v. Rodriguez,* 3 N.Y.3d 462, 787 N.Y.S.2d 697, 821 N.E.2d 122, 125 (2004). The fact that on direct examination, the State's witnesses testified that Mr. Brazeal was not present is one thing, and would be permissible absent the specific references by the State as to the notice of alibi. During direct examination in the State's case, the prosecutor used the notice of alibi in front of the jury specifically as if it was an admission from Defendant, which constitutes the error and the prejudice to Defendant. The law is clear that had Defendant not testified or offered any alibi defense at all, the State would not have been able to present any evidence of the notice of alibi. *See Williams,* 399 U.S. at 84, 90 S.Ct. 1893 ("Nothing ... requires the defendant to rely on an alibi or prevents him from abandoning the defense; these matters are left to his unfettered choice."); *see, e.g., Rodriguez,* 787 N.Y.S.2d 697, 821 N.E.2d at 125. There is no reason to countenance such conduct prior to the defense case being presented.

{44} The prosecutor asked one of his witnesses about Mr. Brazeal, and stated before the jury in the course of examining two State's witnesses that Defendant had filed a document with the court stating that he was

2. In the present case, no demand for alibi nor any notice of alibi appear in the record proper.

with Mr. Brazeal rather than at the scene of the crime, and examined Mr. Hernandez and Defendant about Mr. Brazeal's presence at Mr. Hernandez's house on the day of the crime. This use of the notice and the assertions in it was intentional and pervasive, and the district court continued to allow it. The district court did issue two admonitions, the last of which specifically stated that the jury was to specifically disregard the notice that was filed by Defendant stating that he was not with Mr. Faulkner and Mr. Frasier, and was present at Mr. Hernandez's house when they got there.

{45} The prejudice to Defendant lies in the State's setting up a straw man by its intentional use of the notice of alibi, and by placing Defendant in a position of having to present his version of the defense he eschewed. This is precisely the evil against the Fifth Amendment that Rule 5–508(E) is intended to forestall. Without reference to Mr. Brazeal, the State only had its parade of co-defendants and witnesses to establish that Defendant was there—it was not their place to establish the negative of his alibi in advance of the presentation of his case.

{46} Because I believe the error was not harmless, I also believe the district court should have granted the mistrial. Once the prosecution tells the jury that the defendant has filed a declaration of his defense, the defense has lost its ability even to abandon any defense and stand on the evidence properly before the court. I would reverse and remand for a new trial where the State's case consisted of evidence that was properly theirs.