OPINION OF THE COURT
Levine, J.
The common issue in these appeals is whether defendants Tony Brown and Luis Burgos-Santos were properly impeached at trial with prior inconsistent statements made by defense counsel on their behalf. The People impeached Brown with representations his attorney made at a pretrial Sandoval hearing concerning Brown’s intended trial testimony. BurgosSantos was impeached with a withdrawn alibi notice after he testified to a non-alibi defense. For the reasons that follow, we conclude that the statements in Brown were properly used for impeachment purposes, but that the statements in BurgosSantos were not.
FACTS

People v Brown

Brown was convicted, after a jury trial, of criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]). At trial, an undercover officer testified that he purchased cocaine from defendant and a third person. Defendant, testifying on his own behalf, acknowledged that he was present at the scene of the crime, but maintained that he was there for completely innocent purposes and was not involved in any drug transaction. The trial court then permitted the prosecutor to impeach defendant with prior inconsistent statements his former defense counsel made during a pretrial Sandoval hearing at which defendant was present (see People v Sandoval, 34 NY2d 371 [1974]).[1]
The record of the Sandoval hearing establishes that former defense counsel spent several hours with defendant discussing his case, describing the People’s proof and preparing him in the event he decided to testify at trial. During the first day of the two-day hearing, the prosecutor requested a ruling from *230 the court permitting the People, if defendant testified at trial, to cross-examine him with respect to numerous prior convictions, including those involving the sale, attempted sale and possession of drugs, and his frequent use of aliases and other false pedigree information. Defense counsel requested the court to limit the prosecution’s use of defendant’s extensive criminal history and, in addition, sought an advance ruling that, should defendant testify at trial, his version of the facts would not open the door to impeachment with bad acts excluded under the court’s Sandoval ruling.
In seeking that in limine ruling from the court, counsel explained that defendant was “the only source of testimony in his own defense” and that he expected defendant to testify that “he was there to purchase cocaine, not to sell cocaine.” Counsel further stated that defendant “is going to own up to having purchased cocaine in the past” and “will testify” that he supported his use of cocaine through a legitimate job as a bartender. Counsel then urged the court to fashion its Sandoval ruling so as to allow defendant “to take the stand and tell his side of the story.” The following day, after further extensive consultation with his client and immediately after the court issued the Sandoval ruling, defense counsel again sought to insure that defendant’s expected trial testimony would not open the door to impeachment on matters excluded by the court’s ruling. Thereafter, defendant made certain complaints about defense counsel and requested the appointment of new counsel. Defendant, however, did not claim that counsel misrepresented his proposed testimony.
After defendant testified at trial in a manner inconsistent with his former counsel’s statements at the Sandoval hearing, the prosecutor sought to use counsel’s statements to impeach defendant. The trial court granted the prosecutor’s application, finding that defendant was the “only source of the information” for counsel’s statements at the Sandoval hearing concerning defendant’s proposed testimony and that counsel was acting as defendant’s authorized agent in making those statements.
The Appellate Division affirmed the judgment of conviction (282 AD2d 312), holding that the trial “court properly permitted the prosecutor to impeach defendant with pre-trial statements made by his prior defense counsel in open court in defendant’s presence which conflicted with defendant’s trial testimony.” (Id. at 312.) The Court concluded that “defendant was the only possible source of the information,” that counsel “was delineating defendant’s intended testimony and was not *231 speaking hypothetically,” that defendant specifically authorized counsel’s statements and, even if he did not, that the statements were binding upon him because the attorney made them as defendant’s authorized agent at the Sandoval hearing. (Id. at 313.) We now affirm.

People v Burgos-Santos

Following a jury trial, Burgos-Santos was convicted of murder in the second degree (Penal Law § 125.25 [2] [depraved indifference murder]) and criminal possession of a weapon in the second degree (Penal Law § 265.03). The testimony of the People’s witnesses at trial established that, following a verbal dispute with three unarmed men, defendant retrieved a gun from his car and, despite the close proximity of numerous other persons, fired it at the three men, fatally wounding one of them.
Defendant, however, testifying on his own behalf, claimed that he was the victim of an assault by the same three men and that the gun accidentally discharged while held by one of his assailants. According to defendant, the men attacked him outside his car and he realized that one of them was holding a gun only after he grabbed the man’s hand and heard the gun go off. Defendant claimed that the men then ran away and he drove home without further incident. On cross-examination, the trial court permitted the prosecutor to impeach defendant with a notice of alibi filed by defense counsel pursuant to CPL 250.20, which stated that defendant intended to present a defense that he was at his own home at the time of the shooting incident and to call his common-law wife as an alibi witness. The trial court concluded that the prosecutor could use the alibi notice for impeachment purposes despite the fact that defendant had withdrawn it prior to trial.
The Appellate Division affirmed (287 AD2d 338), holding that the trial court “properly permitted the prosecutor to impeach defendant with his withdrawn and untruthful alibi notice, since the notice was a prior inconsistent statement and an informal judicial admission.” (Id. at 338-339.) We disagree, but nonetheless affirm, concluding that in this case the use of the alibi notice was harmless error.
DISCUSSION
In both of these appeals, the Appellate Division relied upon People v Rivera (58 AD2d 147 [1st Dept 1977], affd on op below 45 NY2d 989 [1978]) in holding that defense counsels’ pretrial statements could be used to impeach defendants. We conclude *232 that the Appellate Division properly applied Rivera in Brown. In contrast, we hold that Rivera is not controlling in BurgosSantos and that the withdrawn notice of alibi should not have been used to impeach defendant after he provided a non-alibi defense at trial.
In Rivera, a “buy and bust” drug prosecution, this Court upheld the prosecutor’s use of a defense attorney’s statement to impeach the defendant after he testified to a different version of events from the one contained in an affidavit defense counsel had submitted to the court in support of a pretrial motion. The attorney’s affidavit indicated that counsel had spoken to defendant, who admitted to possession of a marked $20 bill upon arrest, but claimed to have obtained it not from selling drugs but from giving change to another person involved in the drug transaction. At the trial, the defendant denied both that he had any involvement in the drug transaction and possession of marked buy money. The Appellate Division upheld the use of the attorney’s statement for impeachment purposes, ruling that “the attorney was plainly acting within the scope of his authority, and probably with express authority, in making and filing the affidavit” (58 AD2d at 149). Our Court also affirmed, noting only our different conclusion that the statements in the attorney’s affidavit were more properly admissible under the rule governing informal, rather than formal, judicial admissions (45 NY2d at 990-991).[2]
The facts in Brown fall comfortably within the Rivera holding. Initially, the record supports the undisturbed factual findings of the courts below that Brown was the sole source of the statements concerning his proposed trial testimony and that the attorney made the statements as Brown’s authorized agent. Moreover, counsel made the statements in formal court *233 proceedings, held in Brown’s presence, in order to obtain a favorable pretrial ruling. The statements, which unequivocally represented to the hearing court that Brown was present at the scene only to buy drugs, were inconsistent with his trial testimony that he was at the scene for purely innocent purposes. In addition, as in Rivera, the attorney-client privilege was waived in this case as to the statements Brown’s attorney made on the record in open court. Therefore, the courts below properly allowed the prosecutor to use those statements on cross-examination for impeachment purposes.
We, however, disagree with the courts below that Rivera controls whether a notice of alibi withdrawn before trial may be used to impeach a defendant who testifies at trial to a non-alibi defense. Statements contained in a notice of alibi withdrawn before trial fundamentally differ from defense counsels’ pretrial statements in Rivera and Brown. We therefore conclude that they should not be treated as informal judicial admissions that the prosecution may use to impeach a defendant who gives inconsistent statements at trial.
Pursuant to CPL 250.20 (1), if the People make a timely demand for notification of an alibi defense, and the defendant intends to assert that defense at trial, the defendant must serve and file a notice of alibi within eight days after service of the People’s demand, unless the court extends the period for service of the notice for “good cause shown.” The notice of alibi must state the specific place or places where the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom the defendant intends to rely to establish the alibi (CPL 250.20 [1]).
In Williams v Florida (399 US 78 [1970]), the Supreme Court held that a similar alibi notice statute did not violate a defendant’s Fifth Amendment privilege against self-incrimination. The Court stressed that notice-of-alibi statutes are justified as pretrial discovery devices that foster the truth-seeking function and efficiency of criminal trials. The Court explained that the purpose of notice-of-alibi statutes is to protect the state against potentially fabricated “eleventh-hour” alibi defenses, enhance “the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence” and prevent the disruption of trials that otherwise would be necessary to allow the prosecution the opportunity to investigate an alibi defense raised for the first time at trial (id. at 81-82, 86).
*234 The Williams Court also concluded that the accelerated disclosure of an alibi defense was not “compelled” within the meaning of the Fifth Amendment because such disclosure imposed no greater compulsion than that faced by any defendant who must choose whether to remain silent or testify to an alibi defense at trial. In reaching that conclusion, the Court noted that “[n]othing in [the notice-of-alibi statute] requires the defendant to rely on an alibi or prevents him from abandoning the defense; these matters are left to his unfettered choice” (id. at 84). The Court also pointed out the absence of any suggestion in the Williams record “that his choice of [alibi] defense at trial * * * would have been different but for his prior compliance with the rule” (id. at 84-85 n 15). Because the defendant’s alibi defense was not “fixed” in Williams, the Court explicitly left open the “question of whether a defendant can be compelled in advance of trial to select a defense from which he can no longer deviate” (id.).
Nevertheless, commentators have recognized that allowing the prosecution to use statements in a notice of alibi to impeach a defendant who has elected to abandon that defense has a strong “fixing” tendency (see 4 LaFave, Israel and King, Criminal Procedure § 20.5 [b], at 919 [2d ed]; see also Allis, Limitations on Prosecutorial Discovery of the Defense Case in Federal Courts: The Shield of Confidentiality, 50 S Cal L Rev 461, 466 [1977] [discussing implications of prosecutor’s use of withdrawn alibi notice in opening statement]). These commentators opine that such use of statements contained in a notice of alibi potentially implicates Fifth Amendment and due process concerns (see also Mosteller, Discovery Against the Defense: Tilting the Adversarial Balance, 74 Cal L Rev 1567, 1588-1589, 1645 [1986]).
In apparent recognition of those possible implications and the unfairness inherent in prosecutorial exploitation of statements made in a withdrawn notice of alibi, the Federal Rules of Criminal Procedure and certain state notice of alibi statutes explicitly provide that “[e]vidence of an intention to rely upon an alibi defense, later withdrawn, or of statements made in connection with such intention, is not, in any civil or criminal proceeding, admissible against the person who gave notice of the intention” (Fed Rules Crim Pro rule 12.1 [fl; see also Conn Super Ct Rules § 40-25; Mass Rules Crim Pro rule 14 [b] [1] [F]). As explained by the Federal Criminal Procedure Advisory Committee in proposing a similar rule with respect to a withdrawn notice of intent to raise an insanity defense, the *235 prohibition on the use of a withdrawn notice of a proposed defense is consistent with the Supreme Court’s decision in Williams and insures that the notice requirement “will not deprive the defendant of an opportunity later to elect not to [present that defense]” (Advisory Comm Note to proposed Fed Rules Crim Pro rule 12.2 [e], reprinted in 97 FRD 245, 296).
We similarly conclude that the prosecution should not be permitted to impeach a defendant who has elected not to present an alibi defense at trial with statements contained in a notice of alibi withdrawn before trial. A contrary rule would have the tendency to inhibit a defendant from abandoning a factually inaccurate defense posture and the choice of an accused to testify on his or her own behalf. Aside from possible constitutional implications, such a practice could thus undermine the truth-seeking function that notice of alibi statutes were designed to foster. Indeed, the State in effect would be “destroy[ing] the legitimacy of the discovery procedure” by allowing the use of what may well be “misstatements occurring solely because the defendant was required to speak at an early moment” (Mosteller, Discovery Against the Defense: Tilting the Adversarial Balance, 74 Cal L Rev at 1645, supra). We therefore hold, on state common-law evidentiary grounds,[3] that the trial court erred in permitting the prosecutor to impeach Burgos-Santos with statements made in the withdrawn alibi notice after he testified to a non-alibi defense.
Nonetheless, we agree with the People that the error here was harmless. Because defendant’s objection to the use of the alibi notice was not based on constitutional grounds, the proper standard of harmless error analysis is that which we apply for nonconstitutional trial error — that is, whether proof of guilt was overwhelming and, in light of that proof, there was no significant probability that the jury would have acquitted absent the error (see People v Crimmins, 36 NY2d 230, 241-242 [1975]).
The evidence against Burgos-Santos was indeed overwhelming. Six eyewitnesses gave unequivocal testimony that defendant shot and killed the victim. Despite some minor discrepancies in their testimony and inconsistencies between some of their pretrial statements and trial testimony, their essential rendition of the facts remained unshaken.
Nor was there any significant probability of acquittal had the prosecutor not been permitted to use the withdrawn notice *236 of alibi for impeachment purposes. Defendant’s version of the incident — that he had been beaten and that the gun was discharged accidentally while held by one of his attackers— was directly contradicted by the eyewitnesses and inconsistent with the physical evidence. Not only did defendant admit that he had no visible signs of injury, but photographs taken shortly after the incident also depicted him free of bruises, swelling or any other indicia of physical trauma. Defendant’s credibility was further undermined by his extensive criminal record and admitted use of aliases to mislead law enforcement authorities. Therefore, the use of the alibi notice to further impeach him was harmless error.
Accordingly, in each case, the order of the Appellate Division should be affirmed.

. Brown’s original defense counsel was replaced at defendant’s request for reasons unrelated to the issues raised in this appeal.

. An “informal judicial admission is a declaration made by a party in the course of any judicial proceeding (whether in the same or another case) inconsistent with the position [the party] now assumes” (Fisch, New York Evidence § 803, at 475 [2d ed]). Such an admission is “not conclusive on the defendant in the litigation” (People v Rivera, 45 NY2d at 991) but “is merely evidence of the fact or facts admitted” (Prince, Richardson on Evidence § 8-219, at 530 [Farrell 11th ed]). By contrast, a formal judicial admission “takes the place of evidence” and is “conclusive of the facts admitted in the action in which [it is] made” (id. § 8-215, at 523 [emphasis supplied]). “A formal judicial admission is an act of a party done in the course of a judicial proceeding, which dispenses with the production of evidence by conceding, for the purposes of the litigation, the truth of a fact alleged by the adversary” (id.). Thus, while it was appropriate to impeach the Rivera defendant with the attorney’s affidavit, he was not precluded from presenting his inconsistent testimony.

. Burgos-Santos failed to preserve for this Court’s review his constitutional arguments concerning the notice of alibi.