Kegg v Truck-Rite Distrib. Sys. Corp. (2024 NY Slip Op 24178)

[*1]

Kegg v Truck-Rite Distrib. Sys. Corp.

2024 NY Slip Op 24178

Decided on June 20, 2024

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on June 20, 2024
Supreme Court, Kings County

Hollis Kegg, Plaintiff,

against
Truck-Rite Distribution Systems Corp., Defendant.

Index No. 522684/2018

Goidel & Siegel, LLP, New York City (Jonathan M. Goidel of counsel), for Plaintiff.
Hammill Croutier Pender Koehler Lawless & Moulton, P.C., Syosset (Richard C. Koehler of counsel), for Defendant.

Aaron D. Maslow, J.

INTRODUCTION
The case at bar involves a claim by Plaintiff that she sustained personal injuries resulting from being struck by the Defendant's truck on September 12, 2017, while she was operating her bicycle on Manhattan's Upper West Side, on Broadway, south of West 70th Street, causing her in effect to be squished between that truck and a mail truck ("other truck"). Before the Court are two motions in limine concerning Plaintiff's testimony which require determination for the present trial on liability. Neither of the issues presented in the motions has been specifically addressed in appellate case law.
MOTION IN LIMINE — QUESTIONNAIRE BEARING SIGNATURE OF PLAINTIFF BUT NOT SIGNED BY HER TO BE USED FOR IMPEACHMENT PURPOSES
Where a pre-lawsuit claimant accident questionnaire submitted to an insurance company by a law firm on behalf of a client purportedly was not signed by the client, but rather the lawfirm's legal assistant signed the client's signature, and it contains a description of the accident which is at variance with the testimony of the client — now a plaintiff &mdash, may the questionnaire be [*2]used either to impeach the client-plaintiff or even as affirmative evidence, at trial?
Apparently, Plaintiff will be testifying that the other truck was parked in the parking lane. However, Defendant seeks to impeach her with prior inconsistent statements of hers in which she stated that the other truck was double parked, as opposed to being situated in the parking lane, in particular statements contained within the police accident report and a claimant accident questionnaire [FN1]
submitted to the Defendant's motor vehicle liability insurer.
Plaintiff has made a motion in limine to preclude Defendant from attempting to authenticate the claimant accident questionnaire "unless an offer of proof is made and accepted by the Court outside the presence of the jury, and for such other and further relief as this Court deems just and proper" (Plaintiff's first motion in limine). Plaintiff's counsel avers, "Plaintiff contends that this document is inadmissible and lacks proper authentication under the applicable rules of evidence" (Jonathan Goidel aff in support of Plaintiff's first motion in limine ¶ 3). Counsel adverts to Plaintiff's deposition testimony denying writing the information on the questionnaire or signing it (see id. ¶¶ 5-6).[FN2]
 Thus, concludes counsel, any attempt to lay a foundation to authenticate the questionnaire should be made outside the presence of the jury (see id. ¶¶ 7-11).
Two days ago, out of the presence of the jury of course, Plaintiff's counsel represented to the Court that the claimant accident questionnaire was prepared by a legal assistant in his office, who then signed Plaintiff's signature to it, and then prepared and signed a cover letter which was mailed along with the questionnaire to Defendant's motor vehicle liability insurer. The legal wrote in the cover letter, "As per your request, enclosed please find a completed and signed Claimant Accident Questionnaire with reference to my above-named client" (Letter from Goidel & Siegel LLP to Country Wide Ins. Co., Oct. 23, 2017 [emphasis added]).
Despite the questionnaire not having been signed by Plaintiff, Defendant maintains that "The Questionnaire contains an admission about the happening of the subject accident," and that "plaintiff's counsel represented in an accompanying letter [that it] was signed by plaintiff" (Richard C. Koehler aff in opposition to Plaintiff's first motion in limine ¶ 3). It is emphasized by Defendant that the questionnaire states, "Bicyclist was going north bound on Broadway between a double parked vehicle and moving vehicle on the right side of the moving vehicle. . . ,"[FN3]
and that this is consistent with her statement to the on-scene police officer, resulting in him writing, "Bicyclist stated that she was going north bound on Broadway between a double parked vehicle and moving white delivery truck. . ."[FN4]
(id. ¶¶ 4, 5).
Defendant's counsel avers that the questionnaire "contains a signature line with a signature by plaintiff and is dated October 23, 2017, just over one month after the subject accident" (id. ¶ 6). Noting that the questionnaire contains an anti-fraud advisory (see id. ¶ 9), counsel argues that the questionnaire "is admissible as a hearsay declaration by the plaintiff. While it is anticipated that plaintiff will deny both the statement given on the police report as well as the signature contained on the accident report form, your affirmant should have the right to impeach the plaintiff with the document as well as admitting it into evidence since it has already been authenticated by her counsel[.] It is certainly within the province of the jury to assess plaintiff's credibility in this regard." (Id. ¶ 10.)
As for Plaintiff's counsel's representation that his legal assistant signed the questionnaire, Defendant's counsel states, "What is shocking about this, if true, is that the legal assistant in [*3]counsel's office chose to sign the name of plaintiff and not his own. Regardless, plaintiff should be bound by the representations of her counsel, who it is assumed would have consulted with plaintiff before any such representations were made on her behalf. It is submitted that this is not a trivial issue but goes to the heart of the case and involves the material issue in the case." (Id. ¶ 11.)
Plaintiff's counsel argues that the doctrines of judicial estoppel and a client being bound by an attorney's acts apply, and therefore, that "[P]laintiff should be estopped from denying that the application contains her signature," "Plaintiff's attorney had the authority to speak on her behalf and she is bound by actions taken by him on her behalf within the scope of the attorney's representation of plaintiff," and "[W]hether plaintiff signed the application is a question of fact for the jury to decide and raises issues of credibility for the jury to resolve." (Id. ¶¶ 14-15.)
The issue presented in this motion in limine — whether a statement prepared by a lawfirm's legal assistant, who signed the client's signature and mailed it to the alleged tortfeasor's motor vehicle liability insurer is binding on the client-now plaintiff — does not appear to have been resolved previously in appellate case law.
The Court's resolution of the issue commences with the proposition that "A Trial Judge necessarily is vested with broad discretion to determine the materiality and relevance of proposed evidence" (Hyde v County of Rensselaer, 51 NY2d 927, 929 [1980]; see Caplan v Tofel, 58 AD3d 659 [2d Dept 2009]). Evidence is considered relevant if it has any tendency in reason to prove the existence or non-existence of any material fact, i.e., a fact directly at issue in the case, and makes determination of the action more probable or less probable than it would be without the evidence. However, even relevant evidence is not admissible if its probative value is substantially outweighed by the potential to prejudice, mislead, or confuse the jury. (See People v Nicholson, 26 NY3d 813, 829 [2016]; People v Jin Cheng Lin, 26 NY3d 701, 727 [2016]; People v Giles, 11 NY3d 495, 499 [2008].)
This Court views the issue of whether Plaintiff actually signed the claimant accident questionnaire and under what circumstances to be a collateral one and not bearing directly on the negligence of Defendant's driver or the comparative negligence of Plaintiff. As was held long ago by our State's Court of Appeals, "But still, as has been said, it was a collateral issue. The only purpose of the query was to affect the credibility of the witness; in one sense, to impeach him. In such case a cross-examination is in the discretion of the court. (Gt. W. Turnp. Co. v. Loomis, 32 NY, 127; LeBeau v. People, 34 Id., 223.)" (King v New York Cent. & Hudson Riv. R. R. Co., 72 NY 607, 611 [1878].) In a more recent decision, the same Court held that "Although cross-examination is a matter of right (see Matter of Friedel v Board of Regents of Univ. of State of NY, 296 NY 347, 352 [1947]), it is well settled that its scope and manner are left to the sound discretion of the trial court (see Bernstein v Bodean, 53 NY2d 520, 529 [1981]; Feldsberg v Nitschke, 49 NY2d 636, 643 [1980], rearg denied 50 NY2d 1059 [1980]). Therefore, absent an abuse of discretion, a trial court's determination is beyond our review." (Salm v Moses, 13 NY3d 816 [2009] [evidence of liability insurance injects collateral issue into trial that is not relevant to whether insured acted negligently].) This Court views the disputed factual issues regarding the claimant accident questionnaire as matters to be determined by the Court after hearing testimony about the circumstances under which it was prepared and executed because otherwise the jury will be presented with testimony which will confound them when deliberating on the actual issue in this case, i.e., who, if anyone was negligent at the time of the accident.
Therefore, the Court holds that in order to determine whether the questionnaire may be [*4]used by Defendant at trial, it will hold an in limine hearing to determine whether a proper foundation has been laid for its use.
In terms of legal issues as to whether use of the questionnaire, which constitutes hearsay, lies within the ambit of an exception to the hearsay rule, this Court first considers where the questionnaire fits within the law on prior inconsistent statements, assuming that on the stand Plaintiff will testify that the other truck was parked in the parking lane. Obviously a statement that it was double parked would be inconsistent.
Relevant statutory law is in the form of CPLR 4514:
Rule 4514. Impeachment of witness by prior inconsistent statement. In addition to impeachment in the manner permitted by common law, any party may introduce proof that any witness has made a prior statement inconsistent with his testimony if the statement was made in a writing subscribed by him or was made under oath.
Prior to the promulgation of said CPLR provision, in Larkin v Nassau Elec. R.R. Co. (205 NY 267 [1912]), a seminal decision on the issue of prior inconsistent statements, the Court of Appeals dealt with a case where the plaintiff sued for damages resulting from the death of the intestate allegedly caused by the defendant's negligent operation of a streetcar in Brooklyn. A witness gave testimony favorable to the plaintiff. The defendant sought to impeach him with a typewritten statement bearing his signature. "He testified that the statement was written in his presence by the operator of a typewriter, who while making it asked him questions and wrote on the typewriter when he had answered and when it was done he signed his name to it and the signature thereto was his; that he did not read it over or swear to it. In form it was sworn to before a commissioner of deeds." (Larkin v Nassau Elec. R.R. Co., 205 NY at 268.) The trial court sustained an objection from the plaintiff, finding the typewritten statement incompetent (id. at 268).
In a disquisition on the topic of prior inconsistent statements, the Court wrote:
Any statement of a witness made out of court, orally or in writing, if contradictory of a material part of his testimony, may be, if properly proven, introduced in evidence, not as substantive proof of the truth of such statement, but as tending to discredit him. If it is sought to prove the expression of an opinion inconsistent with the testimony, it is enough if the opinion is so incompatible with the facts testified to by the witness that an honest mind knowing the facts would not be likely to entertain the opinion. Repugnant statements or contraries cannot be true and the fact that the witness has made them tends to show that he is untrustworthy through carelessness, an uncertain memory or dishonesty. Nor need there be a direct and positive contradiction. It is enough that the testimony and the statements are inconsistent and tend to prove differing facts. (Id. at 268-269.)
The procedure to be followed by a trial court, when it encounters a claim of a prior inconsistent statement was related:
A witness cannot be impeached by statements alleged to have been made by him before or after he has testified until he has been adequately warned by the cross-examination that those statements will be later offered against him and thus he or the party calling him be enabled to correct the testimony given or prepare a denial or an explanation of the statements. In case the statements are oral, the warning is given by asking the witness, in substance and effect, if he did not at a given time and place in the presence of or to a person or persons specified make the alleged contradictory statements. (Patchin v. Astor Mut. Ins. Co., 13 NY 268; Sloan v. New York Central R. R. Co., 45 NY 125; Loughlin v. Brassil, 187 NY 128.) In case the statements are in writing and unsubscribed, the paper must be shown or read to the witness and marked for identification, and, if subscribed, the signature and in case he so demands the paper must be shown to him. The attention of a witness having been thus called to the contradictory statements, they may be proven and introduced in evidence in the regular course of the trial. (Id. at 269.)
As to how a prior inconsistent statement is proved, the Court laid out an important standard:
They may, of course, be proved by the admissions of the witness made at the time his attention was called to them. If he fully and clearly admits the making of them as provable by the impeaching party, further proof of them is unnecessary. The impeaching party, however, is entitled to proof of the impeaching testimony as direct and clear as that which the independent and isolated testimony of his own witnesses would afford. The admission of the witness that he signed the written statements adequately proves them. If the witness does not admit that he signed the statements, the genuineness of the signature can be proved by any one or in any legal way. Such proof enables the impeaching party to properly offer the paper in evidence as a part of his case or, with the permission of the court, at any other stage of the trial. The subscription of the witness is some evidence that he made the statements or authorized them to be made for him, and testimony by him that he did not read the statements or hear them read or make them is to be given such force and effect, in connection with the subscription and other relevant evidence, as the jury see fit to accord it. (Clapp v. Wilson, 5 Den. 285; Romertze v. East River Nat. Bank, 49 NY 577; Chicago City Ry. Co. v. Matthieson, 212 Ill. 292; Field v. D., L. & W. R. R. Co., 69 N. J. L. 433.) A more stringent rule is applicable to written contracts. (Phillip v. Gallant, 62 NY 256; Hill v. Syracuse, Binghamton & NY R. R. Co., 73 NY 351.) (Id. at 269-270 [emphasis added].)
It is noted by this Court that the Court of Appeals in Larkin specifically took into account that the witness might deny that he signed the inconsistent statement: If the witness does not admit that he signed the statements, the genuineness of the signature can be proved by any one or in any legal way" (id. at 270). Thus, the party offering the inconsistent statement bears the burden of proving that the witness made or adopted it. If so, then it is the jury's province to determine whether the witness read or heard read to him the statement that he signed. (Id. at 270).
From this, one deduces that it must first be established that the witness signed the inconstant statement. If so, then any issue of whether the witness had read it or it was read to [*5]him are matters for the jury to deal with. As relevant to the case at bar, this means that it is Defendant's burden to prove that Plaintiff signed the claimant accident questionnaire, or at least, that the statement is appropriately ascribed to her. This is confirmed by the holding in O'Connor v International Ry. Co. (213 AD 411, 412 [4th Dept 1925]): "Where a witness for an adverse party has made a written statement containing matter inconsistent with his testimony, such written statement, after its genuineness has been established, either by the admission of the witness or other legal proof, may be put in evidence in its entirety as a part of the case of the party offering it. . . ."
The genuineness of a signature on a purported written statement must be proved by the party seeking to use it:
The trial court properly precluded the defendant from cross-examining one of the complaining witnesses regarding a notarized statement which she had denied signing, and for which the notary could not be located. "[T]here must be a proper foundation laid for the introduction of prior inconsistent statements of a witness. In order to prevent surprise and give the witness the first opportunity to explain any apparent inconsistency between his [or her] testimony at trial and his [or her] previous statements, he [or she] must first be questioned as to the time, place and substance of the prior statement" (People v Duncan, 46 NY2d 74, 80-81 [1978]; see People v Weldon, 111 NY 569, 575-576 [1888]; Richardson, Evidence § 502 [Prince 10th ed]). "If the witness does not admit that he [or she] signed the statement[ ], the genuineness of the signature can be proved by any one or in any legal way. Such proof enables the impeaching party to properly offer the paper in evidence as a part of his [or her] case or, with the permission of the court, at any other stage of the trial" (Larkin v Nassau Elec. R.R. Co., 205 NY 267, 270 [1912][[FN5]
]). Where, as here, the party seeking to admit the writing into evidence has not proven the genuineness of the signature, "the writing 'cannot be read to the jury or, provided it can be produced, used as a basis for cross-examination as to its contents until it is in evidence' " (Jerome Prince, Richardson on Evidence § 6-411 [b] at 407 [Farrell 11th ed 1995], quoting Larkin v Nassau Elec. R.R. Co., 205 NY at 270; see also People v Lyons, 112 AD3d 849, 850 [2013]; People v Benson, 233 AD2d 749 [1996]). Accordingly, we decline to disturb the trial court's determination in this regard. (People v Haywood, 124 AD3d 798, 799 [2d Dept 2015] [emphasis added].)
If a witness denies having signed the statement which a party seeks to use as a prior inconsistent one to impeach her, the witness herself is not the only person who may be called in order to establish that she signed it. "The trial court also properly admitted the statement as a prior inconsistent statement. While the nonparty witness, who initially testified that the signature on the statement looked like hers, ultimately denied signing the statement, defendant was permitted to 'introduce proof' to the contrary (see CPLR 4514; Larkin v Nassau Elec. R.R. Co., 205 NY 267, 270 [1912])." (Cruz v City of New York, 132 AD3d 593, 594 [1st Dept 2015].) In Cruz, another person established the genuineness of the signature on the prior inconsistent [*6]statement: "The trial court properly permitted the testimony of a witness whose identity was not disclosed prior to trial. The witness was called to lay the foundation for the admission of a nonparty witness's statement, and he was not the type of witness whose identity was required to be disclosed during discovery (see Sheppard v Blitman/Atlas Bldg. Corp., 288 AD2d 33, 35 [1st Dept 2001]; see also CPLR 3101). The witness's testimony was not hearsay." (Id. at 594.)
What makes the situation a bit different in the case at bar is the assertion by Plaintiff's counsel that the claimant accident questionnaire bearing Plaintiff's signature and the accompanying cover letter mailed to Defendant's insurer were completed by the legal assistant, who also subscribed Plaintiff's signature. Defendant now strenuously contends that assuming the legal assistant is responsible for this, Plaintiff is bound by its contents, whether she signed it or not — since the lawfirm retained by Plaintiff prepared the questionnaire on her behalf. This raises another evidentiary bypass of the hearsay rule: an admission [FN6]
.
12. Under the doctrine of judicial estoppel, a party may not take a position that is contrary to a position she previously took simply because her interests have changed. The doctrine is invoked to "estop parties from adopting such contrary positions because the judicial system cannot tolerate this playing fast and loose with the courts". Ford Motor Credit Co. v. Colonial Funding Corp., 215 AD2d at 436, 626 N.Y.S.2d 527 (2d Dep't 1985); Bihn v. Connelly, 162 AD3d 626, 628, 78 N.Y.S.3d 243, 244 (2d Dep't 2018).
13. Additionally, it is well-settled a client is bound by her attorneys' acts and/or omissions. See, Forcelli v. Gelco Corp., 109 AD3d 244, 248, 972 N.Y.S.2d 570, 573 (2d Dep't 2013) ("[a] party will be bound by the acts of its agent. . . where the agent has either actual or apparent authority); Burrell v. Bizzoco, 71 Misc 3d 1232(A), 146 N.Y.S.3d 920 (Sup. Ct. Westchester Co. 2021) (noting that the plaintiff was "bound by his attorney's acts"). See also Herz v. Transamerica Life Insurance Co., 172 AD3d (2d Dep't 2019). In Forcelli, the Court noted that it has been long recognized that traditional correspondence can qualify as enforceable and that a letter from counsel can be considered "subscribed" and actually found that emails can be as well. In the instant matter, we are dealing with traditional correspondence on the letter head of plaintiff's counsel signed and representing that the accident claim form was signed by plaintiff. Plaintiff should be bound by the representations of her counsel.
(Richard C. Koehler aff in opposition to Plaintiff's first motion in limine ¶¶ 12-13.)
The matter of an attorney's statement made on behalf of a client binding the client so as to enable an adverse party to utilize it as a prior inconsistent statement arises at times in the context of criminal prosecutions. The Court of Appeals was confronted with the issue in People v Brown (98 NY2d 226 [2002]), which decision actually involved two defendants, Brown and Burgos-Santos. As part of its analysis, the Court reverted to a discussion of People v Rivera (58 AD2d 147 [1st Dept 1977], affd on op below 45 NY2d 989 [1978]:
In Rivera, a "buy and bust" drug prosecution, this Court upheld the prosecutor's use of a defense attorney's statement to impeach the defendant after he testified to a different version of events from the one contained in an affidavit defense counsel had submitted to the court in support of a pretrial motion. The attorney's affidavit indicated that counsel had spoken to defendant, who admitted to possession of a marked $20 bill upon arrest, but claimed to have obtained it not from selling drugs but from giving change to another person involved in the drug transaction. At the trial, the defendant denied both that he had any involvement in the drug transaction and possession of marked buy money. The Appellate Division upheld the use of the attorney's statement for impeachment purposes, ruling that "the attorney was plainly acting within the scope of his authority, and probably with express authority, in making and filing the affidavit" (58 AD2d at 149). Our Court also affirmed, noting only our different conclusion that the statements in the attorney's affidavit were more properly admissible under the rule governing informal, rather than formal, judicial admissions (45 NY2d at 990-991).[footnote reprinted below] (People v Brown, 98 NY2d at 232.)
In its footnote 2, the Court distinguished between an informal judicial admission and a formal judicial admission:
An "informal judicial admission is a declaration made by a party in the course of any judicial proceeding (whether in the same or another case) inconsistent with the position [the party] now assumes" (Fisch, New York Evidence § 803, at 475 [2d ed]). Such an admission is "not conclusive on the defendant in the litigation" (People v Rivera, 45 NY2d at 991) but "is merely evidence of the fact or facts admitted" (Prince, Richardson on Evidence § 8-219, at 530 [Farrell 11th ed]). By contrast, a formal judicial admission "takes the place of evidence" and is "conclusive of the facts admitted in the action in which [it is] made" (id. § 8-215, at 523 [emphasis supplied]). "A formal judicial admission is an act of a party done in the course of a judicial proceeding, which dispenses with the production of evidence by conceding, for the purposes of the litigation, the truth of a fact alleged by the adversary" (id.). Thus, while it was appropriate to impeach the Rivera defendant with the attorney's affidavit, he was not precluded from presenting his inconsistent testimony. (People v Brown, 98 NY2d at 232 n 2.)
With respect to the Brown defendant in People v Brown, the Court held that he was bound by his attorney's prior inconsistent statement made at a Sandoval hearing, which could be used to impeach him:
The facts in Brown fall comfortably within the Rivera holding. Initially, the record supports the undisturbed factual findings of the courts below that Brown was the sole source of the statements concerning his proposed trial testimony and that the attorney made the statements as Brown's authorized agent. Moreover, counsel made the statements in formal court proceedings, held in Brown's presence, in order to obtain a favorable pretrial ruling. The statements, which unequivocally represented to the hearing court that Brown was present at the scene only to buy drugs, were inconsistent with his [*7]trial testimony that he was at the scene for purely innocent purposes. In addition, as in Rivera, the attorney-client privilege was waived in this case as to the statements Brown's attorney made on the record in open court. Therefore, the courts below properly allowed the prosecutor to use those statements on cross-examination for impeachment purposes. (People v Brown, 98 NY2d at 232-233.)
On the other hand, a statement in a notice of alibi which was withdrawn should not have been used impeach defendant Burgos-Santos. The reason was that binding a defendant to an alibi defense presented during the discovery process might inhibit him from abandoning a factually inaccurate defense posture and the choice of an accused to testify on his own behalf; there also are Fifth Amendment and due process considerations. (See id. at 233-235.)
In the civil litigation context, this Court takes notice of several Appellate Division decisions:
The trial court did not err in precluding plaintiffs from reading into evidence or using as a prior inconsistent statement, the response prepared on Dr. Jacobson's behalf to their request for expert witness disclosure pursuant to CPLR 3101 (d) (1). Such statements are not sworn, as are interrogatory answers, affidavits, trial or pretrial testimony, nor are they in the nature of pleadings, to be used for any purpose against a party. It could not be admitted as a prior inconsistent statement of Dr. Jacobson or of his expert witness when neither of them had drafted the response. Nor was it an appropriate basis for the opinions of plaintiffs' experts when neither of them indicated in any way that they relied on it in forming their own opinions. Moreover, it did not constitute the type of information upon which expert opinion is properly founded (see, Matter of Aetna Cas. & Sur. Co. v Barile, 86 AD2d 362, 364-365 [1st Dept 1982]). (Hageman v Jacobson, 202 AD2d 160, 161 [1st Dept 1994].)
Consistent with Hageman is another First Department decision:
During the course of the trial, plaintif's counsel obtained admission, over defendants' objection, of the expert disclosure notices concerning defendants' experts. This was error.
Defendants' CPLR 3101 (d) (1) expert disclosure notices, which were not drafted by defendants' experts but by defendants' attorneys, were not admissible as prior inconsistent statements of the experts (Hageman v Jacobson, 202 AD2d 160; see also, Prince, Richardson on Evidence § 6-411 [Farrell 11th ed]). Nor were they admissible as judicial admissions since "[s]uch statements are not sworn, as are interrogatory answers, affidavits, trial or pretrial testimony, nor are they in the nature of pleadings, to be used for any purpose against a party" (Gibson v St. Luke's Roosevelt Hosp. Ctr., 267 AD2d 136, 137, quoting Hageman v Jacobson, supra, at 161). Since a central issue at trial was whether plaintiff had a stroke, and the prejudice from the erroneous admission of the notices was substantial, a new trial is required (Gibson v St. Luke's Roosevelt Hosp. Ctr., supra). We note that, while the issue is not presented, the remedy for a misleading CPLR 3101 (d) (1) notice is, among other possible remedies, a mistrial and the imposition of costs. (Veneski v Queens-Long Is. Med. Group, 285 AD2d 369, 370 [1st Dept 2001].)
Similarly:
Also contrary to the contention of defendant in his post-trial motion, the court did not abuse its discretion in redacting, at plaintiff's request, certain portions of the videotape in which counsel for defendant questioned plaintiff's expert concerning various statements contained in the expert disclosure to which the expert did not testify at trial. The expert disclosure was drafted by plaintiff's counsel, not the expert himself, and it therefore does not constitute a prior inconsistent statement of the expert (see Veneski v Queens-Long Is. Med. Group, 285 AD2d 369 [2001]). (Kabalan v Hoghooghi, 77 AD3d 1350 [4th Dept 2010].)
"In a civil action the admissions by a party of any fact material to the issue are always competent evidence against him, wherever, whenever or to whomsoever made. (Cook v. Barr, 44 NY 156; Whiton v. Snyder, 88 NY 306; Eisenlord v. Clum, 126 NY 559; Hutchins v. Van Vechten, 140 NY 118; Owen v. Cawley, 36 NY 600.) The theory upon which this class of evidence is held to be competent is that it is highly improbable that a party will admit or state anything against himself or against his own interest unless it is true." (Reed v McCord, 160 NY 330 [1899].)
A statement recorded by someone else in an accident report does not qualify as an admission exception to the hearsay rule where there is no evidence that the declarant was authorized by his employer to make admissions (see Kelly v Diesel Constr. Div. of Carl A. Morse, Inc., 35 NY2d 1, 8 [1974]). A statement of someone who purports to admit something — explicitly or by adoption — is not binding on his principal unless it is shown that he had authority from the person against whom it is intended to be used (see Flynn v Manhattan & Bronx Surface Tr. Operating Auth., 94 AD2d 617, 620 [1st Dept 1983]).
Insofar as the cases cited in paragraphs 12 and 13 in Defendant's counsel's affirmation are concerned, this Court finds them inapplicable to the instant situation. Ford Motor Credit Co. v Colonial Funding Corp. (215 AD2d 435 [2d Dept 1995]) and Bihn v Connelly (162 AD3d 626 [2d Dept 2018]) involved instances where a position advanced by a party in a different lawsuit was contrary to that in a subsequent one. That is different from an inconsistent statement in a questionnaire submitted to an insurance company prior to commencement of an action (and certainly when there is only one action, not two):
Judicial estoppel, or the doctrine of inconsistent positions, precludes a party who assumed a certain position in a prior legal proceeding and who secured a judgment in his or her favor from assuming a contrary position in another action simply because his or her interests have changed (see, Prudential Home Mtge. Co. v Neildan Constr. Corp., 209 AD2d 394; Piedra v Vanover, 174 AD2d 191, 197; Environmental Concern v Larchwood Constr. Corp., 101 AD2d 591, 594). "The doctrine rests upon the principle that a litigant 'should not be permitted . . . to lead a court to find a fact one way and then contend in another judicial proceeding that the same fact should be found otherwise' " (Environmental Concern v Larchwood Constr. Corp., supra, at 593, quoting Note, The Doctrine of Preclusion Against Inconsistent Positions in Judicial Proceedings, 59 Harv L Rev 1132). The doctrine is invoked to estop parties from adopting such contrary positions because the judicial system "cannot tolerate this 'playing "fast and loose with the courts " [*8]' " (Environmental Concern v Larchwood Constr. Corp., supra, at 594, quoting Scarano v Central Ry. Co., 203 F2d 510, 513). (Ford Motor Credit Co. v Colonial Funding Corp., 215 AD2d at 436.)
Therefore, this Court rejects Defendant's arguments premised on the doctrine of judicial estoppel.
Also cited by Defendant were Forcelli v Gelco Corp. (109 AD3d 244 [2d Dept 2013]); Herz v Transamerica Life Ins. Co. (172 AD3d 1336 [2d Dept 2019]); Burrell v Bizzoco, 71 Misc 3d 1232[A], 2021 NY Slip Op 50552[U] [Sup Ct, Westchester County 2021]). None of these are applicable to support Defendant's argument in the instant case that it is well-settled a client is bound by her attorneys' acts and/or omissions" (Richard C. Koehler aff in opposition to Plaintiff's first motion in limine ¶ 13). These cited cases involved attorneys entering into settlements on behalf of their clients. Contract law applied — not the law on hearsay evidence. The questionnaire in this case was not utilized as a component of a settlement process.
Distilling the above-cited case law concerning whether a law firm's statement is binding on a client — both in the criminal and civil contexts &mdash, this Court holds that it is binding on a client, either as an admission or a prior inconsistent statement, if it was made during the formal judicial process, such as a pre-trial motion, during a court hearing (such as a Sandoval hearing), or in prior litigation. However, if such attorney statement was not made during the formal judicial process, but rather prior to litigation being commenced or as part of the discovery process, it is not admissible as an admission or a prior inconsistent statement, unless it is established that the client authorized the statement, adopted it, swore to it, or signed it, which is the law regarding non-judicial admissions.
As applied to the case herein, now at trial, this Court holds that the subject claimant accident questionnaire was not completed and signed (regardless of who signed it) during the formal judicial process — in fact, it was prior to this action being commenced &mdash, so it does not constitute a judicial admission. But if Defendant establishes in an in limine hearing conducted outside the jury's presence that Plaintiff herself signed the claimant accident questionnaire or authorized someone else at the lawfirm she retained to prepare it (either for purposes of adoption or for her own signature) or to sign her signature [FN7]
, it may be used either to impeach Defendant or as affirmative evidence. And, of course, even disregarding the involvement of the lawfirm, the questionnaire may be used by Defendant against Plaintiff if Defendant proves at the in limine hearing that Plaintiff prepared it, adopted it, swore to it, or signed it.
Therefore, it is Defendant's burden to prove that the pre-litigation claimant accident questionnaire — which is hearsay and might have been signed by a legal assistant at the law firm she retained — may be used to impeach Plaintiff or otherwise, under either the doctrines [*9]governing admissions or prior inconsistent statements, in conformity with this opinion. If Defendant meets such burden, the Court will allow Defendant to then use the questionnaire before the trial jury. The in limine hearing shall be held as directed by the Court. If Defendant's counsel elects to do so, in addition to calling Plaintiff as a witness, he may call upon the legal assistant to testify concerning the circumstances under which the questionnaire was prepared and signed.
MOTION IN LIMINE — PLAINTIFF'S PERSONAL BACKGROUND INFORMATION
"It is customary to begin the examination of a witness at a deposition or trial by eliciting background information, including education, employment history, military service, and present occupation. . . . At trial, these facts are usually brought out on direct by the party calling the witness. They serve as an introduction of the witness to the jury—a sort of resume that will be carefully scrutinized when the credibility of the witness is being assessed." (Jeffrey L. Kestler, Questioning Techniques & Tactics § 4:2 [3d ed, Oct. 2022 update].)
But what if the opposing party moves to preclude certain background information of a party?
Defendant has submitted a motion in limine to preclude at trial background information concerning Plaintiff's special needs children. The trial, limited to the issue of liability, began on June 14, 2024. It is scheduled to resume today, June 20, 2024, with Plaintiff being called as a witness. On June 14, 2024, during his opening statement, Plaintiff's counsel stated, among other things, that Plaintiff had special needs children. Now, Defendant moves to preclude testimony on this personal background information: "This Court should preclude plaintiff from testifying about her special needs children as being irrelevant to the issues of liability, [and] prejudicial to defendant as such testimony would only be offered to illicit [sic] potential sympathy for plaintiff to the jury" (Def 2d motion in limine at 1).
This Court performed research on this specific issue but was unable to locate dispositive case law on it. Therefore, its analysis begins again — as cited supra at 4 — with the proposition that "A Trial Judge necessarily is vested with broad discretion to determine the materiality and relevance of proposed evidence" (Hyde v County of Rensselaer, 51 NY2d at 929; see Caplan v Tofel, 58 AD3d 659. Evidence is considered relevant if it has any tendency in reason to prove the existence or non-existence of any material fact, i.e., a fact directly at issue in the case, and makes determination of the action more probable or less probable than it would be without the evidence. However, even relevant evidence is not admissible if its probative value is substantially outweighed by the potential to prejudice, mislead, or confuse the jury. (See People v Nicholson, 26 NY3d at 829; People v Jin Cheng Lin, 26 NY3d at 727; People v Giles, 11 NY3d at 499.)
The material issue in the trial on liability is who was at fault for the accident's occurrence: Defendant's driver, Plaintiff, or both? And if both, the jury will be called upon to ascribe relative proportions of fault to each. That Plaintiff has special needs children has no bearing on that issue. That Plaintiff may have been on her way home to tend to her children might be relevant to the extent it establishes why she took a particular route while bicycling but the fact that they have special needs is too collateral from any issues concerning how she rode her bicycle and how the ensuing accident transpired.
It is improper for a prosecutor to inject comments designed to appeal to the sympathy of the jury (People v Smith, 288 AD2d 496, 497 [2d Dept 2001] [comment that victim was courageous for going to the police and coming before the jury]). Likewise, in a civil trial, it is improper to elicit [*10]sympathy for a plaintiff who sues for personal injuries based on her personal home life when the trial is in the liability phase. The issue is who proximately caused the accident. Nonetheless, it is conceivable that the status of Plaintiff's children might be relevant in a damages phase (if Defendant is found at least partially liable) because damages for pain and suffering would include compensation for loss of enjoyment of life, including how Plaintiff's interactions with her children were affected — but not in the liability phase.
That a plaintiff injured in a motor vehicle accident has children with special needs would tend to elicit sympathy for her. It might be that the jury could set aside that sympathy when deliberating on who was liable but the risk is too great. Any relevance as to the status of the children to whom Plaintiff was to see at home is outweighed by the prejudice that the testimony would create in Plaintiff's favor. As was held in the context of a criminal trial:
The prosecutor improperly appealed to the jury's sympathy by eliciting testimony from the victim's mother that the victim's wife was expecting a child and expressing sympathy for her loss by stating on the record, "Thank you ma-am. I'm sorry for your loss" (see People v Miller, 6 NY2d 152, 157 [1959]). A defendant is "entitled to a trial upon evidence proving or tending to prove the crime with which he was charged '. . . uninfluenced by irrelevant facts and circumstances which tend to prejudice or mislead the jury' " (People v Tassiello, 300 NY 425, 430-431 [1950], quoting People v Posner, 273 NY 184, 190 [1937]). "Testimony about victims' personal backgrounds that is immaterial to any issue at trial should be excluded" (People v Harris, 98 NY2d 452, 490-491 [2002]). Here, the testimony in question was calculated to appeal to the passion and sympathy of the jury and unduly prejudiced the defendant (see People v Miller, 6 NY2d at 157; People v Caruso, 246 NY 437, 443 [1927]). (People v Holiday, 142 AD3d 625, 626 [2d Dept 2016].)
Moreover, in other instances, it has been held that it is improper to elicit certain personal information about a defendant or a victim (e.g. People v Caruso, 246 NY 437 [1927] [testimony by wife of victim about being married for 18 months and having six-month-old child and accused's citizenship status not material to circumstances of crime; appeals to sympathy or prejudice can be harmful]; People v Montanez, 78 AD3d 1198 [2d Dept 2010] [evidence that defendant was diagnosed with thyroid cancer approximately four months after arrest not admissible; to extent that evidence was relevant to material fact in the case, whatever probative value it conferred was substantially outweighed by danger it would unfairly prejudice the People by creating sympathy for defendant]).
Accordingly, this Court grants Defendant's in limine motion and will preclude any evidence that Plaintiff has special needs children, finding that the prejudice which will inure to the benefit of Plaintiff and to the detriment of Defendant outweigh any probative value in including this fact in presenting Plaintiff's background information to the jury.
CONCLUSION
Plaintiff's testimony shall be subject to the foregoing determinations on Plaintiff's and Defendant's motions in limine.
Dated: June 20, 2024
Brooklyn, NY,
____________________________
AARON D. MASLOW
Justice of the Supreme Court of the
State of New York

Footnotes

Footnote 1:. Plaintiff refers to the claimant accident questionnaire as a "document" (Plaintiff's first motion in limine), while Defendant refers to it variously as a "claimant accident questionnaire form," an "accident report," an "accident form," an "accident report form, and an "application" ("Richard C. Koehler aff in opposition to Plaintiff's first motion in limine ¶ 3). For purposes of clarity, this Court will refer to it as the "claimant accident questionnaire" (title on page 1 of the questionnaire) or the "questionnaire."

Footnote 2:. Plaintiff's deposition testimony was quoted from in counsel's affirmation's ¶ 5 on page 2:
Q. Do you recognize any of the handwriting on the first page of that document, the first page being the one that contains the Exhibit A sticker?
A. No
Q. let me direct your attention to the second page.
A Okay.
Q. Do you recognize any of the handwriting on the second page of that document?
A No.
Q And let me direct your attention to bottom of that document.
A. Right.
Q. Where there's a signature, appears to be a signature next to the word signature?
A. Right.
Q. Is that your signature?
A. No, it is not my signature.
Q. All right. And let me direct your attention to the date 10/23/17, that is handwritten next to the word date; is that your handwriting?
A No, it is not.
Q. Do you know who signed this?
A. I do not know, this is the first time I am seeing this.

Footnote 3:. For the sake of completeness, because Defendant's counsel did not quote the entire purported accident description, the Court quotes it here: "Bicyclist was going north bound on Broadway Between a Double parked vehicle and moving vehicle on the right side of the moving vehicle when vehicle # 1 did striked Bicyclist causing her to fall to the ground" (Claimant Accident Questionnaire, Oct. 23, 2017 at 2 [spelling and sentence structure per original]).

Footnote 4:. Defendant's counsel did not quote the police report accident description exactly as set forth in the officer's report; the officer did not mention that the delivery truck was white. The officer wrote, "AT T/P/O BICYCLIST STATED SHE WAS GOING NORTH BOUND ON BROADWAY BETWEEN A DOUBLE PARKED VEHICLE AND MOVING VEHICLE ( VEHICLE #1) ON THE RIGHT SIDE OF THE MOVING VEHICLE , WHEN VEHICLE #1 DID STRIKED BICYCLIST CAUSING TO FALL TO THE GROUND , CAUSING CUT INTO THE LEFT INNER THIGH OF THE LEFT LEG . TOURNIQUET WAS APPLY TO STOP THE BLEEDING THAT WAS SQUERTING FROM THE WOUND. FURTHERMORE, SHE RECEIVED SCRAPES TO RIGHT LEG , AND PAIN TO HER LOWER BACK" (Police Accident Report, Sept. 12, 2017 at 1 [spelling and sentence structure per original]).

Footnote 5:. The citation to Larkin v Nassau Elec. R.R. Co. (205 NY 267 [1912]), discussed supra at 5-6, indicates that it is still good law and to be followed.

Footnote 6:. Defendant argued, "The Questionnaire contains an admission about the happening of the subject accident" (Richard C. Koehler aff in opposition to Plaintiff's first motion in limine ¶ 3).

Footnote 7:. To the extent that there is a possibility that the legal assistant prepared the questionnaire without consent from Plaintiff or subscribed Plaintiff's signature, naturally this implicates other issues which create a potential conflict between Plaintiff and the lawfirm (see Rules of Prof Conduct [22 NYCRR 1200.0] rule 5.3 [Lawyer's responsibility for conduct of nonlawyers]; Matter of Hallock, 37 NY3d 436 [2021]; Matter of Bernstein, 148 AD3d 4 [2d Dept 2017]; Matter of Shapiro, 55 AD3d 291 [2d Dept 2008]; Matter of Harris, 138 AD3d 89 [2d Dept 2016]). The Court deems it appropriate to raise this issue before both counsels.